U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

**UNITED STATES DISTRICT COURT
IN THE DISTRICT OF VERMONT**

2008 MAR 21   PM 1:57

CLERK

BY _____
DEPUTY CLERK

HUNT CONSTRUCTION GROUP, )
INC., )
)
        Plaintiff, )
) Docket No. 1:08-cv-65
        v. )
)
BRENNAN BEER GORMAN / )
ARCHITECTS, P.C., )
WILSON ASSOCIATES, S. )
DeSIMONE CONSULTING )
ENGINEERS, LLC, and )
COSENTINI ASSOCIATES, INC., )
)
        Defendants.

## COMPLAINT

Plaintiff, Hunt Construction Group, Inc., ("Hunt"), by its attorneys, for its

Complaint against Defendants Brennan Beer Gorman / Architects, P.C. ("BBG"),

Wilson Associates ("Wilson Associates"), S. DeSimone Consulting Engineers, LLC

("DeSimone"), and Cosentini Associates, Inc. ("Cosentini"), alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Hunt is an Indiana corporation with its principal place of

business in Indianapolis, Indiana.

2.    Defendant BBG is a New York corporation with its principal place of

business in New York, New York.

3.    Defendant Wilson Associates is a Pennsylvania corporation with its

principal place of business in New York, New York.

4.    Defendant DeSimone is a Nevada corporation with its principal place

of business in New York, New York.

LANGROCK SPERRY
& WOOL LLP

1

5.      Defendant Cosentini is a New York corporation with its principal place of business in New York, New York.

6.      Jurisdiction of this Court is based on the diversity of citizenship of the parties. 28 U.S.C. § 1332. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7.      Venue in this District is appropriate because the events giving rise to this action occurred in this District. 28 U.S.C § 1391(a).

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

8.      On August 1, 2005, Hunt entered into a contract (the "Construction Contract") with Spruce Peak Realty, LLC ("Spruce Peak" or "Client") to construct a resort hotel and spa named the "Stowe Mountain Lodge" at 7322 Mountain Road, Stowe, Vermont (the "Project"). (The Construction Contract is voluminous and consists of the "Contract Documents" including, but not limited to, the "Cost Plus Contract with Guaranteed Maximum Price" (the "Cost Plus Contract"), the "Project Design Development Plans and Specifications," the to be completed "Project Construction Documents," "General Conditions" and the "Supplementary General Conditions"). A copy of the Cost Plus Contract is attached as Exhibit A.

9.      The Construction Contract entitled Hunt to be compensated for the Cost of the Work up to a guaranteed maximum price ("GMP") which was to be adjusted as set forth in the Construction Contract (Cost Plus Contract, Section 4.1).

10.     The Project Construction Documents, which included the "Construction Drawings", were to be completed by August 27, 2005, and once completed become a "Contract Document" (Cost-Plus Contract, Section 1.1). Hunt

LANGROCK SPERRY
& WOOL LLP

2

was to establish the Final Guaranteed Maximum Price ("F-GMP") from the Project Construction Documents.

11.    Contrary to the Construction Contract, the Project Construction Documents were not completed and delivered to Hunt on August 27, 2005. The Project Construction Documents were rather provided to Hunt in piecemeal fashion through the issuance of multiple Bulletins. To this date, the Project Construction Documents are still incomplete and missing critical information necessary to construct the Project.

12.    On or about June 5, 2006, the Construction Contract was modified by Change Order Number 6 and a F-GMP of $96,799,933.00 was established for Hunt's work on the Project.

## ALLEGATIONS RELATING SPECIFICALLY TO BBG

13.    Upon information and belief, Spruce Peak executed a contract with Defendant BBG to serve as Architect. The Construction Contract identifies BBG as the Architect on the Project.

14.    BBG is an architect required to perform its work with the reasonable care, competence and technical knowledge of other professional architects in the same locality.

15.    Hunt was required by the Construction Contract to "perform all work required to complete the project and related work in accordance with the Contract Documents which consist generally of plans and specifications prepared by the Architect, Architect's Consultants and Client's consultants..." (Cost Plus Contract, Section 2.1).

LANGROCK SPERRY & WOOL LLP

3

16.     Section 2.4 of the Cost Plus Contract required Hunt to perform its work "in a professional and competent manner, consistent with the Architect's design requirements...and in accordance with the Contract documents".

17.     Defendant BBG prepared certain Contract Documents pursuant to its contract with Spruce Peak that BBG knew would be delivered to and relied upon by Hunt to perform the construction of the Project. The Contract Documents prepared by BBG included the Project Design Development Plans and Specifications and Project Construction Documents, of which the Construction Drawings were a part.

18.     Defendant BBG had other specific responsibilities as Architect under the Construction Contract.

a.     BBG had the authority to reject work performed by Hunt that it deemed to be non-conforming.

b.     BBG was responsible for the review and approval of shop drawings submitted by Hunt pursuant to Article 18 of the Cost        Plus Agreement, and to respond to Requests for Information ("RFIs") concerning the Contract Documents.

c.     BBG was responsible for reviewing and approving the substitution of materials proposed by Hunt pursuant to Section 4.6 of the Cost Plus Contract.

d.     BBG was responsible for reviewing and approving Hunt's requests for progress payments pursuant to Section 7.2 of the Cost Plus Contract. Hunt was also required to obtain BBG's approval pursuant to Article 8.1 of the Cost Plus Contract before it was entitled to receive final payment.

e.    BBG was responsible for the review of change orders proposed by Hunt.

19.    Defendant BBG knew that Hunt intended to perform its work in accordance with the Contract Documents, and that Hunt would utilize the Contract Documents prepared by BBG to establish the F-GMP and Project Schedule.

20.    Defendant BBG knew that Hunt would incur cost overruns and schedule delays if its Contract Documents were incomplete, inaccurate or completed later than on August 27, 2005.

21.    Defendant BBG also knew that Hunt was relying upon BBG's timely review and approval of shop drawings and submittals, and BBG's timely response to RFIs in order for Hunt to complete its work within the F-GMP and in accordance with the Project Schedule.

22.    Defendant BBG knew that Hunt would incur cost overruns and schedule delays if BBG did not timely review Hunt's shop drawings and submittals, or promptly respond to RFIs.

### ALLEGATIONS RELATING SPECIFICALLY TO WILSON ASSOCIATES

23.    Upon information and belief, Spruce Peak executed a contract with Defendant Wilson Associates to serve as Interior Designer on the Project.

24.    Upon information and belief, Wilson Associates prepared the Interior Design Drawings ("ID Drawings") that Hunt needed to construct the Project showing the type of and layout of all light fixtures, tile, carpet, paint, millwork and other interior finishes to be used by Hunt in the construction of the Project.  The ID Drawings were part of the Project Construction Documents to be issued to Hunt, and also a Contract Document.

LANGROCK SPERRY
& WOOL LLP

25.     Hunt was required by the Construction Contract to "perform all work required to complete the project and related work in accordance with the Contract Documents which consist generally of plans and specifications prepared by the Architect, Architect's Consultants and Client's consultants..." (Cost Plus Contract, Section 2.1).

26.     Defendant Wilson Associates prepared certain ID Drawings pursuant to its contract with Spruce Peak that Wilson Associates knew would be delivered to and relied upon by Hunt to perform the construction of the Project.

27.     Defendant Wilson Associates knew that Hunt intended to perform its work in accordance with the ID Drawings, and that Hunt would utilize the ID Drawings to establish the F-GMP and Project Schedule.

28.     Defendant Wilson Associates knew that Hunt would incur cost overruns and schedule delays if the ID Drawings were incomplete, inaccurate or completed later than on August 27, 2005.

29.     Defendant Wilson Associates also knew that Hunt was relying upon its timely review and approval of shop drawings and submittals relating to the ID Drawings, and Wilson Associates' timely response to RFIs in order for Hunt to complete its work within the F-GMP and in accordance with the Project Schedule.

30.     Defendant Wilson Associates knew that Hunt would incur cost overruns and schedule delays if it did not timely review Hunt's shop drawings and submittals, or promptly respond to RFIs.

### ALLEGATIONS RELATING SPECIFICALLY TO DESIMONE

31.     Upon information and belief, Spruce Peak executed a contract with DeSimone to serve as Structural Engineer on the Project.

LANGROCK SPERRY
& WOOL LLP

6

32.   DeSimone is a structural engineer required to perform its work with the reasonable care, competence and technical knowledge of other professional engineers in the same locality.

33.   Upon information and belief, Defendant DeSimone prepared the design for the structural frame of the Project ("Structural Engineering Drawings") that were to be included within the Project Construction Documents, and are also a Contract Document.

34.   Hunt was required by the Construction Contract to "perform all work required to complete the project and related work in accordance with the Contract Documents which consist generally of plans and specifications prepared by the Architect, Architect's Consultants and Client's consultants..." (Cost Plus Contract, Section 2.1).

35.   Defendant DeSimone prepared certain Structural Engineering Drawings pursuant to its contract with Spruce Peak that DeSimone knew would be delivered to and relied upon by Hunt to perform the construction of the Project.

36.   Defendant DeSimone had other specific responsibilities as Structural Engineer under the Construction Contract:

a.   DeSimone had the authority to reject work performed by Hunt that it deemed to be non-conforming.

b.   DeSimone was responsible for the review and approval of shop drawings submitted by Hunt pursuant to Article 18 of the Cost Plus Agreement, and to respond to Requests for Information ("RFIs") concerning the Contract Documents.

c.     DeSimone was responsible for reviewing and approving the substitution of materials proposed by Hunt.

d.     DeSimone was responsible for the review of change orders proposed by Hunt.

37.     Defendant DeSimone knew that Hunt intended to perform its work in accordance with the Structural Engineering Drawings, and that Hunt would utilize the Structural Engineering Drawings to establish the F-GMP and Project Schedule.

38.     Defendant DeSimone knew that Hunt would incur cost overruns and schedule delays if the Structural Engineering Drawings were incomplete, inaccurate or completed later than on August 27, 2005.

39.     Defendant DeSimone also knew that Hunt was relying upon its timely review and approval of shop drawings and submittals relating to the Structural Engineering Drawings, and DeSimone's timely response to RFIs in order for Hunt to complete its work within the F-GMP and in accordance with the Project Schedule.

40.     Defendant DeSimone knew that Hunt would incur cost overruns and schedule delays if it did not timely review Hunt's shop drawings and submittals, or promptly respond to RFIs.

### ALLEGATIONS RELATING SPECIFICALLY TO COSENTINI

41.     Upon information and belief, Spruce Peak executed a contract with Cosentini to serve as the mechanical, electrical and plumbing ("MEP") Engineer on the Project.

42.     Cosentini is an MEP engineer required to perform its work with the reasonable care, competence and technical knowledge of other professional engineers in the same locality.

LANGROCK SPERRY
& WOOL LLP

43.    Upon information and belief, Defendant Cosentini prepared the MEP Drawings that were to be included within the Project Construction Documents, and are also a Contract Document.

44.    Hunt was required by the Construction Contract to "perform all work required to complete the project and related work in accordance with the Contract Documents which consist generally of plans and specifications prepared by the Architect, Architect's Consultants and Client's consultants..." (Cost Plus Contract, Section 2.1).

45.    Defendant Cosentini prepared MEP Drawings pursuant to its contract with Spruce Peak that Cosentini knew would be delivered to and relied upon by Hunt to perform the construction of the Project.

46.    Defendant Cosentini had other specific responsibilities as Structural Engineer under the Construction Contract:

a.    Cosentini had the authority to reject work performed by Hunt that it deemed to be non-conforming.

b.    Cosentini was responsible for the review and approval of shop drawings submitted by Hunt pursuant to Article 18 of the Cost Plus Agreement, and to respond to Requests for Information ("RFIs") concerning the Contract Documents.

c.    Cosentini was responsible for reviewing and approving the substitution of materials proposed by Hunt.

d.    Cosentini was responsible for the review of change orders proposed by Hunt.

47.     Defendant Cosentini knew that Hunt intended to perform its work in accordance with the MEP Drawings, and that Hunt would utilize the MEP Drawings to establish the F-GMP and Project Schedule.

48.     Defendant Cosentini knew that Hunt would incur cost overruns and schedule delays if the MEP Drawings were incomplete, inaccurate or completed later than on August 27, 2005.

49.     Defendant Cosentini also knew that Hunt was relying upon its timely review and approval of shop drawings and submittals relating to the MEP Drawings, and Cosentini's timely response to RFIs in order for Hunt to complete its work within the F-GMP and in accordance with the Project Schedule.

50.     Defendant Cosentini knew that Hunt would incur cost overruns and schedule delays if it did not timely review Hunt's shop drawings and submittals, or promptly respond to RFIs.

### COUNT I –
### Negligence – BBG

51.     Plaintiff Hunt repeats paragraphs 1 through 22 of the Complaint and incorporates them by reference in their entirety for paragraph 51 of Count I of the Complaint.

52.     Defendant BBG had the common law duty as a licensed Vermont architect, to exercise that degree of care and skill in the performance of its services consistent with that of other professional architects practicing in or around the location of the Project.

53.     Defendant BBG negligently failed to deliver the Project Construction Documents by August 27, 2005.

LANGROCK SPERRY
& WOOL LLP

54.     BBG negligently failed to perform its services in accordance with its duty of care in that the Contract Documents it prepared were incomplete and contained errors and omissions including, but not limited to, the following:

a.     BBG's architectural drawings were incomplete and had missing drawings and details, incorrect dimensions and elevations, and were otherwise defective resulting in the revision of almost every architectural drawing.

b.     BBG's architectural drawings failed to show the use of balcony waterproofing resulting in delays and additional costs to Hunt as partially described in PCO 404.

c.     BBG's design for the eave edge conditions at the roof was defective  resulting in delays and additional costs to Hunt as partially described in PCO 575.

d.     BBG's design for the boiler and domestic water heater exhaust was defective resulting in delays and additional costs to Hunt as partially described in PCO 339.

e.     BBG failed to coordinate its design with the structural engineer resulting in delays and additional costs to Hunt as partially described in PCO 477.

f.     BBG's design failed to reflect the existence of soffits in the kitchen for eighty eight studio guest rooms resulting in delays and additional costs to Hunt as partially described in PCO 516.

g.     BBG's design for the spa was defective resulting in delays and additional costs to Hunt as partially described in PCO 559.

55.     Defendant BBG negligently failed to promptly respond to RFIs, shop drawings and submittals.

LANGROCK SPERRY
& WOOL LLP

56.   Hunt has suffered damages in excess of $75,000 as a direct and proximate result of BBG's negligence.

WHEREFORE, Plaintiff Hunt Construction Group, Inc. requests that this Court enter judgment in its favor and against Defendant Brennan Beer Gorman/Architects, P.C. for damages, together with interest and costs and such other relief as is appropriate.

### COUNT II
### Negligent Misrepresentation – BBG

57.   Plaintiff Hunt repeats paragraphs 1 through 22 of the Complaint and incorporates them by reference in their entirety for paragraph 57 of Count II of the Complaint.

58.   Defendant BBG had the common law duty as a licensed Vermont architect, to exercise that degree of care and skill in the performance of its services consistent with that of other professional architects practicing in or around the location of the Project.

59.   BBG, in the course of its professional services as a licensed architect, was in the business of supplying information for the guidance of Hunt in its business transactions including, but not limited to, Hunt's determination of the F-GMP, Hunt's establishment of a reasonable Project Schedule, and the use by Hunt of the Contract Documents prepared by BBG for the construction of the Project.

60.   BBG supplied inaccurate information for Hunt's guidance by delivering Contract Documents, including the Project Construction Documents and Construction Drawings, which were inaccurate, contained errors and omissions including, but not limited to the following:

a.     BBG's architectural drawings were incomplete and had missing drawings and details, incorrect dimensions and elevations, and were otherwise defective resulting in the revision of almost every architectural drawing.

b.     BBG's architectural drawings failed to show the use of balcony waterproofing resulting in delays and additional costs to Hunt as partially described in PCO 404.

c.     BBG's design for the eave edge conditions at the roof was defective  resulting in delays and additional costs to Hunt  as partially described in PCO 575.

d.     BBG's design for the boiler and domestic water heater exhaust was defective resulting in delays and additional costs to Hunt as partially described in PCO 339.

e.     BBG failed to coordinate its design with the structural engineer resulting in delays and additional costs to Hunt as partially described in PCO 477.

f.     BBG's design failed to reflect the existence of soffits in the kitchen for eighty eight studio guest rooms resulting in delays and additional costs to Hunt as partially described in PCO 516.

g.     BBG's design for the spa was defective resulting in delays and additional costs to Hunt as partially described in PCO 559.

61.     BBG knew and intended that Hunt would rely on its Contract Documents to establish the F-GMP and Project Schedule, and to perform the work required by its Contract Documents.

62.     Hunt justifiably relied upon the Contract Documents prepared by BBG.

LANGROCK SPERRY
& WOOL LLP

63.    Hunt has suffered damages in excess of $75,000 as a direct and proximate result of BBG's misrepresentations, and the preparation of its Contract Documents, which contained inaccurate, erroneous, and incomplete information.

WHEREFORE, Plaintiff Hunt Construction Group, Inc. requests that this Court enter judgment in its favor and against Defendant Brennan Beer Gorman/Architects, P.C. for damages, together with interest and costs and such other relief as is appropriate.

### COUNT III
### Negligence  –  Wilson Associates

64.    Plaintiff Hunt repeats paragraphs 1 through 12 and 23 through 30 of the Complaint and incorporates them by reference in their entirety for paragraph 64 Count III of the Complaint.

65.    Defendant Wilson Associates had the common law duty to exercise that degree of care and skill in the performance of its services consistent with that of other professional design consultants practicing in or around the location of the Project.

66.    Defendant Wilson Associates negligently failed to deliver its ID Drawings by August 27, 2005.

67.    Defendant Wilson Associates negligently failed to perform its services in accordance with its duty of care in that the ID Drawings it prepared were incomplete and contained errors and omissions including, but not limited to, the following:

LANGROCK SPERRY
& WOOL LLP

14

a.     Wilson Associates' design failed to include proper dimensions for outlet and light locations resulting in delays and additional costs to Hunt as partially described in PCO 382.

b.     Wilson Associates' design failed to provide proper details for window jamb extensions resulting in delays and additional costs to Hunt as partially described in PCO 797.

c.     Wilson Associates' design was not properly coordinated with mechanical drawings resulting in delays and additional costs to Hunt as partially described in PCO 649.

d.     Wilson Associates' design for the doors was defective resulting in delays and additional costs to Hunt as partially described in PCO 961.

e.     Wilson Associates' planned heights for the $4^{th}/5^{th}$ floor lobby ceiling conflicted with the stairs going down to the 4th floor and constituted a code violation.

68.     Defendant Wilson Associates negligently failed to promptly respond to RFIs, shop drawings and submittals.

69.     Hunt has suffered damages in excess of $75,000 as a direct and proximate result of Wilson Associates' negligence.

WHEREFORE, Plaintiff Hunt Construction Group, Inc. requests that this Court enter judgment in its favor and against Defendant Wilson Associates for damages, together with interest and costs and such other relief as is appropriate.

LANGROCK SPERRY
& WOOL LLP

## COUNT IV
### Negligent Misrepresentation – Wilson Associates

70.     Plaintiff Hunt repeats paragraphs 1 through 12 and 23 through 30 of the Complaint and incorporates them by reference in their entirety for paragraph 70 of Count IV of the Complaint.

71.     Defendant Wilson Associates had the common law duty to exercise that degree of care and skill in the performance of its services consistent with that of other professional design consultants practicing in or around the location of the Project.

72.     Wilson Associates was in the business of supplying information for the guidance of Hunt in its business transactions including, but not limited to, Hunt's determination of the F-GMP, Hunt's establishment of a reasonable Project Schedule, and the use by Hunt of the ID Drawings prepared by Wilson Associates for the construction of the Project.

73.     Wilson Associates supplied inaccurate information for Hunt's guidance by delivering ID Drawings that were inaccurate, contained errors and omissions including, but not limited to the following:

a.      Wilson Associates' design failed to include proper dimensions for outlet and light locations resulting in delays and additional costs to Hunt as partially described in PCO 382.

b.      Wilson Associates' design failed to provide proper details for window jamb extensions resulting in delays and additional costs to Hunt as partially described in PCO 797.

LANGROCK SPERRY
& WOOL LLP

16

   c. Wilson Associates' design was not properly coordinated with mechanical drawings resulting in delays and additional costs to Hunt as partially described in PCO 649.

   d. Wilson Associates' design for the doors was defective resulting in delays and additional costs to Hunt as partially described in PCO 961.

   e. Wilson Associates' planned heights for the $4^{th}/5^{th}$ floor lobby ceiling conflicted with the stairs going down to the 4th floor and constituted a code violation.

  74. Wilson Associates knew and intended that Hunt would rely on its ID Drawings to establish the F-GMP and Project Schedule, and to perform the work required by its ID Drawings.

  75. Hunt justifiably relied upon the ID Drawings prepared by Wilson Associates.

  76. Hunt has suffered damages in excess of $75,000 as a direct and proximate result of Wilson Associates' misrepresentations, and the preparation of its ID Drawings, which contained inaccurate, erroneous, and incomplete information.

  WHEREFORE, Plaintiff Hunt Construction Group, Inc. requests that this Court enter judgment in its favor and against Defendant Wilson Associates for damages, together with interest and costs and such other relief as is appropriate.

LANGROCK SPERRY
& WOOL LLP

## COUNT V
### Negligence – DeSimone

77.     Plaintiff Hunt repeats paragraphs 1 through 12 and 31 through 40 of the Complaint and incorporates them by reference in their entirety for paragraph 77 of Count V of the Complaint.

78.     Defendant DeSimone had the common law duty as a licensed Vermont engineer, to exercise that degree of care and skill in the performance of its services consistent with that of other professional engineers practicing in or around the location of the Project.

79.     Defendant DeSimone negligently failed to deliver its Structural Engineering Drawings by August 27, 2005.

80.     Defendant DeSimone negligently failed to perform its services in accordance with its duty of care in that the Structural Engineering Drawings it prepared were incomplete and contained errors and omissions including, but not limited to, the following:

a.     DeSimone's structural drawings were incomplete and missing drawings and details, incorrect dimensions and member sizes, and were otherwise defective resulting in the revision of almost every structural engineering drawing.

b.     DeSimone's design failed to include required truss supports and temporary host beams resulting in delays and additional costs to Hunt as partially described in PCOs 550 and 403.

c.     DeSimone's design of the steel framing at hip roof of Area A was defective resulting in delays and additional costs to Hunt as partially described in PCO 329.

LANGROCK SPERRY
& WOOL LLP

d.     DeSimone's design of the roof overhangs for the 4th, 5th and 6th floors was defective resulting in delays and additional costs to Hunt as partially described in PCO 372.

e.     DeSimone's design of the construction joint at the Spa/Lodge interface was defective resulting in delays and additional costs to Hunt as partially described in PCO 103.

f.     DeSimone's design of the fire pit and Restaurant Terrace foundation walls was defective resulting in delays and additional costs to Hunt as partially described in PCO 956.

81.     Defendant DeSimone negligently failed to promptly respond to RFIs, shop drawings and submittals.

82.     Hunt has suffered damages in excess of $75,000 as a direct and proximate result of DeSimone's negligence.

WHEREFORE, Plaintiff Hunt Construction Group, Inc. requests that this Court enter judgment in its favor and against Defendant S. DeSimone Consulting Engineers, LLC for damages, together with interest and costs and such other relief as is appropriate.

### COUNT VI
### Negligent Misrepresentation – DeSimone

83.     Plaintiff Hunt repeats paragraphs 1 through 12 and 31 through 40 of the Complaint and incorporates them by reference in their entirety for paragraph 83 of Count VI of the Complaint.

84.     Defendant DeSimone had the common law duty as a licensed Vermont engineer, to exercise that degree of care and skill in the performance of its

LANGROCK SPERRY
& WOOL LLP

services consistent with that of other professional engineers practicing in or around the location of the Project.

85.    Defendant DeSimone, in the course of its professional services as a licensed engineer, was in the business of supplying information for the guidance of Hunt in its business transactions including, but not limited to, Hunt's determination of the F-GMP, Hunt's establishment of a reasonable Project Schedule, and the use by Hunt of the Structural Engineering Drawings prepared by DeSimone for the construction of the Project.

86.    Defendant DeSimone supplied inaccurate information for Hunt's guidance by delivering Structural Engineering Drawings that were inaccurate, contained errors and omissions including, but not limited to the following:

a.    DeSimone's structural drawings were incomplete and missing drawings and details, incorrect dimensions and member sizes, and were otherwise defective resulting in the revision of almost every structural engineering drawing.

b.    DeSimone's design failed to include required truss supports and temporary host beams resulting in delays and additional costs to Hunt as partially described in PCO s 550 and 403.

c.    DeSimone's design of the steel framing at hip roof of Area A was defective resulting in delays and additional costs to Hunt as partially described in PCO 329.

d.    DeSimone's design of the roof overhangs for the 4th, 5th and 6th floors was defective resulting in delays and additional costs to Hunt as partially described in PCO 372.

LANGROCK SPERRY
& WOOL LLP

20

e.     DeSimone's design of the construction joint at the Spa/Lodge interface was defective resulting in delays and additional costs to Hunt as partially described in PCO 103.

f.     DeSimone's design of the fire pit and Restaurant Terrace foundation walls was defective resulting in delays and additional costs to Hunt as partially described in PCO 956.

87.     Defendant DeSimone knew and intended that Hunt would rely on its Structural Engineering Drawings to establish the F-GMP and Project Schedule, and to perform the work required by its Structural Engineering Drawings.

88.     Hunt justifiably relied upon the Structural Engineering Drawings prepared by DeSimone.

89.     Hunt has suffered damages in excess of $75,000 as a direct and proximate result of DeSimone's misrepresentations, and the preparation of its Structural Engineering Drawings, which contained inaccurate, erroneous, and incomplete information.

WHEREFORE, Plaintiff Hunt Construction Group, Inc. requests that this Court enter judgment in its favor and against S. DeSimone Consulting Engineers, LLC for damages, together with interest and costs and such other relief as is appropriate.

**COUNT VII**
**Negligence – Cosentini**

90.     Plaintiff Hunt repeats paragraphs 1 through 12 and 41 through 50 of the Complaint and incorporates them by reference in their entirety for paragraph 90 of Count VII of the Complaint.

LANGROCK SPERRY
& WOOL LLP

91.     Defendant Cosentini had the common law duty as a licensed Vermont engineer, to exercise that degree of care and skill in the performance of its services consistent with that of other professional engineers practicing in or around the location of the Project.

92.     Defendant Cosentini negligently failed to deliver its MEP Drawings by August 27, 2005.

93.     Defendant Cosentini negligently failed to perform its services in accordance with its duty of care in that the MEP Drawings it prepared were incomplete and contained errors and omissions including, but not limited to, the following:

a.     Cosentini's MEP drawings were incomplete and had missing drawings and details, incorrect dimensions, and were otherwise defective resulting in the revision of almost every MEP drawing.

b.     Cosentini's design of the Cabinet Unit Heaters was defective resulting in delays and additional costs to Hunt as partially described in PCO 45.

c.     Cosentini's design relating to the use of the temporary cooling towers was defective resulting in delays and additional costs to Hunt as partially described in PCO 529.

d.     Cosentini's design relating to the Fire/Smoke Dampers was defective resulting in delays and additional costs to Hunt as partially described in PCO 583.

e.     Cosentini's design relating to the layout of the two transformers was defective resulting in delays and additional costs to Hunt as partially described in PCO 722.

LANGROCK SPERRY
& WOOL LLP

22

f.    Cosentini's design relating to the breakers for the emergency generator was defective resulting in delays and additional costs to Hunt as partially described in PCO 645.

94.    Defendant Cosentini negligently failed to promptly respond to RFIs, shop drawings and submittals.

95.    Hunt has suffered damages in excess of $75,000 as a direct and proximate result of Cosentini's negligence.

WHEREFORE, Plaintiff Hunt Construction Group, Inc. requests that this Court enter judgment in its favor and against Defendant Cosentini Associates, Inc. for damages, together with interest and costs and such other relief as is appropriate.

## COUNT VIII
### Negligent Misrepresentation – Cosentini

96.    Plaintiff Hunt repeats paragraphs 1 through 12 and 41 through 50 of the Complaint and incorporates them by reference in their entirety for paragraph 86 of Count VIII of the Complaint.

97.    Defendant Cosentini had the common law duty as a licensed Vermont engineer, to exercise that degree of care and skill in the performance of its services consistent with that of other professional engineers practicing in or around the location of the Project.

98.    Defendant Cosentini, in the course of its professional services as a licensed engineer, was in the business of supplying information for the guidance of Hunt in its business transactions including, but not limited to, Hunt's determination

LANGROCK SPERRY
& WOOL LLP

of the F-GMP, Hunt's establishment of a reasonable Project Schedule, and the use by Hunt of the MEP prepared by Cosentini for the construction of the Project.

99.    Defendant Cosentini supplied inaccurate information for Hunt's guidance by delivering MEP Drawings that were inaccurate, contained errors and omissions including, but not limited to the following:

a.    Cosentini's MEP drawings were incomplete and had missing drawings and details, incorrect dimensions, and were otherwise defective resulting in the revision of almost every MEP drawing.

b.    Cosentini's design of the Cabinet Unit Heaters was defective resulting in delays and additional costs to Hunt as partially described in PCO 45.

c.    Cosentini's design relating to the use of the temporary cooling towers was defective resulting in delays and additional costs to Hunt as partially described in PCO 529.

d.    Cosentini's design relating to the Fire/Smoke Dampers was defective resulting in delays and additional costs to Hunt as partially described in PCO 583.

e.    Cosentini's design relating to the layout of the two transformers was defective resulting in delays and additional costs to Hunt as partially described in PCO 722.

f.    Cosentini's design relating to the breakers for the emergency generator was defective resulting in delays and additional costs to Hunt as partially described in PCO 645.

100.   Defendant Cosentini knew and intended that Hunt would rely on its MEP Drawings to establish the F-GMP and Project Schedule, and to perform the work required by its MEP Drawings.

101.   Hunt justifiably relied upon the MEP Drawings prepared by Cosentini.

102.   Hunt has suffered damages in excess of $75,000 as a direct and proximate result of Cosentini's misrepresentations, and the preparation of its MEP Drawings, which contained inaccurate, erroneous, and incomplete information.

WHEREFORE, Plaintiff Hunt Construction Group, Inc. requests that this Court enter judgment in its favor and against Cosentini Associates, Inc., for damages, together with interest and costs and such other relief as is appropriate.

### JURY DEMAND

Pursuant to the Seventh Amendment to the Constitution of the United States and Fed.R.Civ.P. 38(b), Plaintiff requests a jury trial on all counts so triable.

LANGROCK SPERRY
& WOOL LLP

DATED at Burlington, Vermont this 21st day of March, 2008.

LANGROCK SPERRY & WOOL, LLP

David W. M. Conard, Esq.
Erin Miller Heins, Esq.
210 College Street, PO Box 721
Burlington, VT 05401-721
(802) 864-0217

STEIN, RAY & HARRIS, LLP

Steven G.M. Stein, Esq.
Joel J. Rhiner, Esq.
Jean M. Gallo, Esq.
Stein, Ray & Harris LLP
222 West Adams, Suite 1800
Chicago, Illinois 60606
(312) 641-3700
*Seeking Pro Hac Vice Admission*

Attorneys for Plaintiff Hunt Construction
Group, Inc.