UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

VERMONT COUNTRY FOODS, INC.    :
                               :
     v.                        :     Civil No. 1:02cv83
                               :
SO-PAK-CO, INC. and UNAKA      :
COMPANY, INCORPORATED          :
_____:

RULING ON DEFENDANT SO-PAK-CO, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
(Paper 37)

I. Background

On a motion for summary judgment, the moving party has the initial burden of informing the Court of the basis for its motion and of identifying the absence of a genuine issue of material fact. See, e.g., Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 36 (2d Cir. 1994). Where, as here, a motion for summary judgment is supported by affidavits and other documentary evidence, the party opposing that motion must set forth specific facts showing there is a genuine, material issue for trial. See Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 526 (2d Cir. 1994). Only disputes over facts which might affect the outcome of the suit under the governing law preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The genesis of this matter is the failed business relationship between plaintiff Vermont Country Foods, Inc. (hereafter "VCF"), a marketer of speciality food products, and

1



defendant So-Pak-Co, Inc. (hereinafter "SPC"), a contract food packer. The basis of the complaint is that SPC breached an agreement to produce soup and gravy for VCF to resell to retail establishments. In its five-count Amended Complaint, the plaintiff sets forth causes of action describing misrepresentation (Count I), breach of contract (Counts II and IV), conversion (Count III) and piercing the corporate veil of SPC's parent company, UNAKA Company, Inc. (Count V). See generally Amended Complaint (Paper 24).

The plaintiff explains:

> VCF makes two general claims in this action: first, that SPC intentionally or negligently misrepresented its then-current expertise, capabilities, and actual performance in the production of goods for its other customers in order to induce VCF to enter into the business relationship. . . . Second, VCF claims that SPC was under contractual obligation to produce VCF's gravy and soup, in quantities sufficient to meet the demand for these products, and with a yield performance as set forth in the draft processing agreements. . . .

Plaintiff's Memorandum in Opposition to Motion for Partial Summary Judgment (Paper 50) at 10.

The issues raised in SPC's motion, and the fact that discovery is on-going, render it unnecessary and inappropriate to further set forth the particular facts underlying this dispute. In this motion, SPC argues several of plaintiff's claims are insufficient as a matter of law. SPC maintains that, because VCF's claims are grounded in contract, its tort

2

AO 72A
(Rev.8/82)

claims must be dismissed. See Defendant's Motion for Partial Summary Judgment (Paper 37) at paras. 2, 3, and 4. In addition, any award of contractual damages based on VCF's loss of future business, profits, and diminution of brand value are too speculative and likewise barred. See Paper 37 at para. 1. For the reasons set forth below, the Defendant's Motion for Partial Summary Judgment is GRANTED.

## II. Discussion

### A. Lost Profits

Plaintiff alleges SPC breached the parties' alleged agreement to produce for VCF "ready to eat soups and gravies in glass containers." Paper 24 at para. 5. According to VCF, "[a]s a direct and proximate result of SPC's misrepresentations, and breaches of the operating agreements between SPC and VCF, VCF has been unable to meet the demand for its products, and its products have been discontinued by numerous distributors, resulting in losses to VCF which exceed One Million Dollars." Paper 24 at para. 47. SPC interprets this allegation as evidencing the plaintiff's attempt to recover lost future profits.

"The general rule is that evidence of expected profits from a new business is too speculative, uncertain, and remote to be considered and does not meet the legal standard of reasonable certainty." Berlin Dev. Corp. v. Vermont

3

Structural Steel Corp., 127 Vt. 367, 372 (1969). "Under Vermont law, a Plaintiff seeking to recover lost profits must show that his business (1) was a going concern with (2) an established history of profits." Vescio v. Merchants Bank, 272 B.R. 413, 436 (D. Vt. 2001). "Accordingly, recovery for lost profits is not generally allowed for injury to a new business with no history of profits." Berlin Dev. Corp., 127 Vt. at 372.

Here, VCF alleges SPC's breach of contract hindered its attempt to initiate a new venture, the distribution of two new food products. Accordingly, VCF's own allegations demonstrate it cannot show the business at issue either was "a going concern" or had a "history of profits." To the extent the plaintiff claims a loss of future business, future profits, and future diminution of brand value, those claims for damages are dismissed.

### B. Plaintiff's Tort Claims

The plaintiff presents two tort claims. In Count I, the plaintiff alleges SPC misrepresented its ability to manufacture its products, thereby causing it to suffer financial losses. In Count III, VCF alleges "SPC has refused to allow plaintiff to remove from defendant's premises inventory of raw materials, packaging components, and finished products, which is the property of the plaintiff, which had a

4

value in excess of $300,000." Paper 24 at para. 53.

According to SPC, because this case involves economic harm arising from an alleged breach of contract, VCF's tort claims must be dismissed pursuant to the "economic loss rule." "The underlying premise of the economic loss rule is that negligence actions are best suited for 'resolving claims involving unanticipated physical injury, particularly those arising out of an accident. Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement'." Springfield Hydroelectric Co. v. Copp, 172 Vt. 311, 314 (2001)(citation omitted).

Vermont law, therefore, clearly "prohibits a claimant from seeking damages for contractual losses through tort law." Wentworth v. Crawford & Co., 174 Vt. 118, 127 (2002). Here, though styled as "misrepresentation" and "conversion" claims, the plaintiff is alternatively attempting to frame a commercial contract claim as one also grounded in tort. According to the court in Springfield Hydroelectric v. Copp, such tort claims can only be sustained where the plaintiff identifies a "duty of care independent of any contractual obligations." 174 Vt. at 316 (citation, quotation and emphasis omitted). In this case, the plaintiff has not distinguished any duty assumed by the defendant above and

5

beyond those it describes in the parties' alleged agreement. Plaintiff's tort claims are subject to dismissal.

### C. Punitive Damages

VCF has withdrawn its claim for punitive damages. See Paper 50 at 35. Plaintiff's claim for punitive damages, therefore, is dismissed. See also Vescio, 272 B.R. at 439 (under Vermont law, plaintiff must prove actual malice).

### III. Conclusion

The Defendant's Motion for Partial Summary Judgment is GRANTED. Counts I and III of the Amended Complaint, and any claims for lost future business, profits, and diminution of brand value are dismissed. Counts II, IV and V remain pending and subject to applicable breach of contract standards of recovery. See, e.g., Wyatt v. Palmer, 165 Vt. 600, 602 (1996)("[C]onsequential damages [for breach of contract] are subject to the limitations of causation, certainty, and foreseeability.").

SO ORDERED.

Dated at Brattleboro, Vermont, this 28TH day of July, 2004.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge

AO 72A (Rev.8/82)

**Westlaw.**

170 Fed.Appx. 756 Page 1
170 Fed.Appx. 756, 2006 WL 695672 (C.A.2 (Vt.))
(Cite as: 170 Fed.Appx. 756, 2006 WL 695672 (C.A.2 (Vt.)))

C
Vermont Country Foods, Inc. v. So-Pak-Co, Inc.
C.A.2 (Vt.),2006.
This case was not selected for publication in the Federal Reporter.
United States Court of Appeals,Second Circuit.
VERMONT COUNTRY FOODS, INC., Plaintiff-Appellant,
v.
SO-PAK-CO, INC., and Unaka Company, Inc., Defendants-Appellees.
No. 05-3429.

March 16, 2006.

**Background:** Corporation that had entered into a draft agreement with second corporation brought tort action against that corporation, seeking losses for future profits. After granting partial summary judgment for defendant, the United States District Court for the District of Vermont, J. Garvan Murtha, J., found plaintiff liable to defendant for more than $216,000. Plaintiff appealed.

**Holdings:** The Court of Appeals held that:
(1) tort claims for misrepresentation were barred under Vermont's economic loss rule;
(2) plaintiff was not permitted to seek losses for future profits under Vermont law;
(3) district court properly denied plaintiff leave to amend its complaint; and
(4) draft agreements were properly excluded from evidence.

Affirmed.

West Headnotes

[1] Fraud 184 €→32

184 Fraud
    184II Actions
        184II(A) Rights of Action and Defenses
            184k32 k. Effect of Existence of Remedy by Action on Contract. Most Cited Cases
Plaintiff's tort claims for misrepresentation were barred under Vermont's economic loss rule, where defendant's only duty arose from an alleged agreement between the parties.

[2] Fraud 184 €→9

184 Fraud
    184I Deception Constituting Fraud, and Liability Therefor
        184k8 Fraudulent Representations
            184k9 k. In General. Most Cited Cases
Under Vermont law, plaintiff's failure to point to a specific misrepresentation precluded recovery for misrepresentation.

[3] Damages 115 €→40(1)

115 Damages
    115III Grounds and Subjects of Compensatory Damages
        115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
            115III(A)1 In General
                115k35 Pecuniary Losses
                    115k40 Loss of Profits
                        115k40(1) k. In General. Most Cited Cases
Under Vermont law, corporation that was still in start-up mode and had no established history of profits when it brought civil action was not permitted to seek losses for future profits.

[4] Federal Civil Procedure 170A €→851

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(E) Amendments
            170Ak851 k. Form and Sufficiency of Amendment. Most Cited Cases
Plaintiff was properly denied leave to amend its complaint, where the amendment was futile. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

[5] Evidence 157 €→353(12)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

170 Fed.Appx. 756                                                                                                          Page 2
170 Fed.Appx. 756, 2006 WL 695672 (C.A.2 (Vt.))
(Cite as: 170 Fed.Appx. 756, 2006 WL 695672 (C.A.2 (Vt.)))

157 Evidence
    157X Documentary Evidence
        157X(C) Private Writings and Publications
            157k353 Conveyances, Contracts, and Other Instruments
                157k353(12) k. Void Instruments. Most Cited Cases

Draft agreements were properly excluded in corporation's civil action, given danger that these unexecuted draft contracts could be mistaken for a complete contract.

*757 United States District Court for the District of Vermont. (J. Garvan Murtha, J.).
ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of said District Court be and it hereby is **AFFIRMED**.
Richard Coutant, of Bellows Falls, VT, for Appellant.
Marc Heath and Eric Poehlmann, of Burlington, VT, for Appellees.

Present: ROSEMARY S. POOLER, BARRINGTON D. PARKER, Circuit Judges, and DENNY CHIN,[FN*] District Judge.

    FN* The Honorable Denny Chin of the United States District Court for the Southern District of New York sitting by designation.

SUMMARY ORDER

**1 Plaintiff-Appellant Vermont Country Foods, Inc. ("VCF" or "appellant") filed a complaint against So-Pak-Co, Inc. ("SPC") and Unaka Company, Inc. ("Unaka") on March 25, 2002, in the United States District Court for the District of Vermont (J. Garvan Murtha, J.). **(A 22-37).** On July 28, 2004, the district court granted SPC's motion for partial summary judgment. **(A 804-09).** The remaining claims (counts II, IV, and V) were scheduled to proceed to trial. On April 14, 2005, the court denied VCF's motion to amend its complaint

**(A 15).** On May 27, 2005, the jury returned a verdict granting VCF the credit it sought, rejecting VCF's other claims, and finding VCF liable to SPC for a net amount of $216,686.92, not including interests and costs. We assume the parties' familiarity with the facts, procedural history, and specification of issues on appeal.

*758 The first two issues on appeal are from the district court's summary judgment decision. This Court reviews *de novo* the summary judgment decision by a district court. *Pepsico, Inc. v. Coca-Cola Co.,* 315 F.3d 101, 104 (2d Cir.2002) (per curiam). Summary judgment is appropriate only where, "[e]xamining the evidence in the light most favorable to the nonmoving party,"*Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.,* 145 F.3d 543, 547 (2d Cir.1998), the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The final issues, the district court's denial of VCF's motion to amend its complaint and refusal to admit the draft contract into evidence, are reviewed for abuse of discretion. *SeeGrochowski v. Phoenix Constr.,* 318 F.3d 80, 86 (2d Cir.2003); *United States v. Slaughter,* 386 F.3d 401, 403 (2d Cir.2004). A district court abuses its discretion "when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision-though not necessarily the product of a legal error or a clearly erroneous factual finding-cannot be located within the range of permissible decisions." *Zervos v. Verizon N.Y., Inc.,* 252 F.3d 163, 169 (2d Cir.2001) (footnotes omitted).

[1] First, the district court correctly dismissed VCF's tort claims for misrepresentation. Vermont courts are careful to maintain a line between contract and tort theories of recovery. *Breslauer v. Fayston Sch. Dist.,* 163 Vt. 416, 421, 659 A.2d 1129 (1995) (affirming dismissal of negligence claim for economic losses resulting from breach of employment contract). This Court has found that in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

170 Fed.Appx. 756                                                                                            Page 3
170 Fed.Appx. 756, 2006 WL 695672 (C.A.2 (Vt.))
**(Cite as: 170 Fed.Appx. 756, 2006 WL 695672 (C.A.2 (Vt.)))**

order to prevent "open-ended liability, courts have applied the economic loss rule ["ELR"] to prevent the recovery of damages that are inappropriate because they actually lie in the nature of breach of contract as opposed to tort." *Hydro Investors, Inc. v. Trafalgar Power Inc.,* 227 F.3d 8, 16 (2d Cir.2000). The Supreme Court of Vermont explained in *Springfield Hydroelectric Co. v. Copp,* 172 Vt. 311, 779 A.2d 67 (2001), that "negligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm." *Id.* at 314, 779 A.2d 67 (internal quotation marks omitted). The Vermont court explained in *Springfield* that "claimants cannot seek, through tort law, to alleviate losses incurred pursuant to a contract." *Id.* at 315, 779 A.2d 67. Although once limited to product liability claims, under Vermont law the ELR now "clearly applies to commercial disputes outside the confines of product liability." *Springfield,* 172 Vt. at 315, 779 A.2d 67. The "underlying analysis" turns on whether there is a "duty of care *independent* of any contractual obligations." *Id.* at 316, 779 A.2d 67 (internal quotation marks and citations omitted) (emphasis in original). Without a duty of care, an action for negligence cannot stand. *Gus' Catering, Inc. v. Menusoft Sys.,* 171 Vt. 556, 559, 762 A.2d 804 (2000).

**2 [2] Here, VCF cites no duty owed by SPC separate from the agreements. As in *Logan v. Bennington College Corp.,* 72 F.3d 1017, 1029 (2d Cir.1995), the duty of care "is nothing more than the claim that [appellant] is entitled to receive that which is due him under the contract." *Id.* at 1029. Moreover, even if the ELR does not prohibit the tort claims, VCF points to no specific misrepresentation. Therefore, on the merits, VCF's claims for misrepresentation would fail.

[3] Second, the district court was correct to find that under Vermont law, VCF *759 is not permitted to seek losses for future profits. In *Berlin Dev. Corp. v. Vermont Structural Steel Corp.,* 127 Vt. 367, 372, 250 A.2d 189 (1968), the Vermont Supreme Court held, "[t]he general rule is that evidence of expected profits from a new business is too speculative, uncertain, and remote to be considered and does not meet the legal standard of reasonable certainty. Accordingly, recovery for lost profits is not generally allowed for injury to a new business with no history of profits." *Id.* (citations omitted). And in *Vescio v. Merchs. Bank,* 272 B.R. 413, 436 (D.Vt.2001), the district court explained, "[u]nder Vermont law, a Plaintiff seeking to recover lost profits must show that his business (1) was a going concern with (2) an established history of profits."(citation omitted). Although VCF was in business for nearly eight years before the events at issue here, VCF was still in start-up mode when it brought its claims and had no established history of profits. Therefore, VCF is not eligible to seek future profits.

[4] Finally, the district court did not abuse its discretion in denying VCF leave to amend its complaint and refusing to admit the draft processing agreements in evidence. Leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "In determining whether to grant leave to amend, the Court should consider whether the motion is being made after an inordinate delay without adequate explanation, whether prejudice to the defendants would result, whether granting the motion would cause further delay, and whether the amendment would be futile." *Mountain Cable Co. v. Pub. Serv. Bd.,* 242 F.Supp.2d 400, 403 (D.Vt.2003) (citing *Grace v. Rosenstock,* 228 F.3d 40, 53-54 (2d Cir.2000)). In its original complaint, VCF conceded that no contract was ever executed by either party. The amendment that VCF sought to make was that the parties entered into a contract whose terms were dictated by the September 22, 2001, draft agreement. The draft agreement maintains that "[e]xecution and delivery of this Agreement by both parties" is a condition precedent to SPC's performance. (A 831). The amendment was a futile one, and the district court did not abuse its discretion.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

170 Fed.Appx. 756
170 Fed.Appx. 756, 2006 WL 695672 (C.A.2 (Vt.))
**(Cite as: 170 Fed.Appx. 756, 2006 WL 695672 (C.A.2 (Vt.)))**

Page 4

[5] VCF nonetheless argues that it should have been permitted to include the draft agreements as evidence. The district court determines the relevance of evidence. *United States v. Lumpkin,* 192 F.3d 280, 287 (2d Cir.1999). It possesses wide discretion to exclude evidence posing "an undue risk of harassment, prejudice [or] confusion of the issues." *United States v. Pascarella,* 84 F.3d 61, 70 (2d Cir.1996) (internal quotation marks omitted). This Court has explained that decisions to admit or exclude evidence are reviewed for abuse of discretion and are overturned only where arbitrary or irrational. *Lumpkin,* 192 F.3d at 287-90. Here, the denial of the evidence was neither arbitrary nor irrational. The court's decision was based, in part, on the fear that the draft contracts, which were never executed, could be mistaken for a complete contract.

**\*\*3** Accordingly, for the reasons set forth above, the judgment of the District Court is hereby **AFFIRMED**.

C.A.2 (Vt.),2006.
Vermont Country Foods, Inc. v. So-Pak-Co., Inc.
170 Fed.Appx. 756, 2006 WL 695672 (C.A.2 (Vt.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



135 F.Supp.2d 454                                                                                                              Page 1
135 F.Supp.2d 454
**(Cite as: 135 F.Supp.2d 454)**

▷

City of Burlington v. Zurn Industries, Inc.
D.Vt.,2001.

United States District Court,D. Vermont.
CITY OF BURLINGTON, Plaintiff,
v.
ZURN INDUSTRIES, INC., Zurn EPC. Services, Inc., Aalborg Industries Inc., and Hartford Steam Boiler Inspection and Insurance Co., Defendants.
**Civil Action No. 1:99-CV-404.**

March 21, 2001.

City brought action against contractor to recover damages for alleged defects in economizer boiler system installed by contractor. On cross-motions for summary judgment, the District Court, Murtha, Chief Judge, held that: (1) fact issues remained as to whether city supervisor had apparent authority to enter into release with contractor; (2) fact issues remained as to when city discovered defects; and (3) city could not recover purely economic damages under negligence theory.

Motions granted in part, and denied in part.

West Headnotes

**[1] Principal and Agent 308 ⚶177(1)**

308 Principal and Agent
　　308III Rights and Liabilities as to Third Persons
　　　　308III(E) Notice to Agent
　　　　　　308k177 Imputation to Principal in General
　　　　　　　　308k177(1) k. In General. Most Cited Cases
Under Vermont law, knowledge of agent acting within scope of his or her authority is generally chargeable to principal, regardless of whether that knowledge is actually communicated.

**[2] Municipal Corporations 268 ⚶230**

268 Municipal Corporations
　　268VII Contracts in General
　　　　268k230 k. Powers of Officers or Boards. Most Cited Cases
Under Vermont law, municipal corporation is generally not bound by contract executed by one of its employees, unless it had granted employee authority to enter into contract on its behalf.

**[3] Municipal Corporations 268 ⚶230**

268 Municipal Corporations
　　268VII Contracts in General
　　　　268k230 k. Powers of Officers or Boards. Most Cited Cases
Under Vermont law, party dealing with agent of municipal corporation carries burden of ascertaining whether agent is within limitation of his or her authority.

**[4] Municipal Corporations 268 ⚶230**

268 Municipal Corporations
　　268VII Contracts in General
　　　　268k230 k. Powers of Officers or Boards. Most Cited Cases
Under Vermont law, release executed by supervisor of city department was not binding against city under theory of actual authority, absent evidence that city had granted supervisor authority to enter into release on its behalf.

**[5] Principal and Agent 308 ⚶99**

308 Principal and Agent
　　308III Rights and Liabilities as to Third Persons
　　　　308III(A) Powers of Agent
　　　　　　308k98 Implied and Apparent Authority
　　　　　　　　308k99 k. In General. Most Cited Cases
Under Vermont law, elements of claim of apparent authority are: (1) principal must, by words or conduct, create appearance of authority in agent; and (2) third party must reasonably rely on that appearance of authority.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

135 F.Supp.2d 454
135 F.Supp.2d 454
(Cite as: 135 F.Supp.2d 454)

Page 2

**[6] Municipal Corporations 268 ⇐230**

268 Municipal Corporations
    268VII Contracts in General
        268k230 k. Powers of Officers or Boards. Most Cited Cases
Under Vermont law, where municipal corporation acts similarly to private corporation in ordinary business affairs, law does not absolutely preclude enforcement of municipality's contract, regardless of officer's apparent authority.

**[7] Federal Civil Procedure 170A ⇐2492**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)2 Particular Cases
                170Ak2492 k. Contract Cases in General. Most Cited Cases
Genuine issue of material fact as to whether supervisor of city department had apparent authority to enter into release with contractor precluded summary judgment in favor of contractor in city's action against contractor for breach of contract.

**[8] Contracts 95 ⇐189**

95 Contracts
    95II Construction and Operation
        95II(C) Subject-Matter
            95k189 k. Scope and Extent of Obligation. Most Cited Cases
Under Vermont law, disclaimer of tort liability is construed strictly against the party relying on it.

**[9] Contracts 95 ⇐114**

95 Contracts
    95I Requisites and Validity
        95I(F) Legality of Object and of Consideration
            95k114 k. Exemption from Liability. Most Cited Cases
Under Vermont law, language of contractual provision limiting tort liability of parties to contract must be specific enough to unmistakably reflect intent of both parties in order to relieve defendant of possible liability.

**[10] Contracts 95 ⇐142**

95 Contracts
    95I Requisites and Validity
        95I(F) Legality of Object and of Consideration
            95k142 k. Questions for Jury. Most Cited Cases
Under Vermont law, question of adequacy of release limiting tort liability of parties is matter of law for court to decide.

**[11] Contracts 95 ⇐189**

95 Contracts
    95II Construction and Operation
        95II(C) Subject-Matter
            95k189 k. Scope and Extent of Obligation. Most Cited Cases
Under Vermont law, release relieving city contractor of "any further obligation to bear costs associated with the malfunction or failure to perform of any equipment" was sufficient to preclude city from seeking negligence damages arising from defects in equipment, even though release did not use word "negligence."

**[12] Sales 343 ⇐53(1)**

343 Sales
    343I Requisites and Validity of Contract
        343k53 Questions for Jury
            343k53(1) k. In General. Most Cited Cases
Under Vermont law, when there is no controversy regarding contract's provisions, court may resolve as matter of law issue of whether contract was predominately one for sale of goods or services, and thus which statute of limitations is applicable.

**[13] Federal Civil Procedure 170A ⇐2492**

170A Federal Civil Procedure
    170AXVII Judgment

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

135 F.Supp.2d 454 Page 3
135 F.Supp.2d 454
(Cite as: 135 F.Supp.2d 454)

   170AXVII(C) Summary Judgment
      170AXVII(C)2 Particular Cases
         170Ak2492 k. Contract Cases in General. Most Cited Cases
Genuine issue of material fact as to when city discovered defects in welding in its economizer boiler system precluded summary judgment on limitations grounds in city's action against welder for breach of contract.

[14] Damages 115 €➔208(1)

115 Damages
   115X Proceedings for Assessment
      115k208 Questions for Jury
         115k208(1) k. In General. Most Cited Cases
Under Vermont law, issue of whether contracting party's losses arising from alleged breach of contract are recoverable under negligence theory is matter of law to be decided by court.

[15] Action 13 €➔27(1)

13 Action
   13II Nature and Form
      13k26 Contract or Tort
         13k27 Nature of Action
            13k27(1) k. In General. Most Cited Cases
Under Vermont law, city's action against contractor for breaching its duty to perform under contract for installation of economizer boiler and to adequately inspect its work was based solely on improper installation and construction of boiler, and thus damages sought were strictly economic and not recoverable under negligence theory, absent claims of any bodily injury or damage to any other property.

*456 Kevin John Coyle, McNeil, Leddy & Sheahan, P.C., Burlington, VT, for City of Burlington.
Richard Thomas Cassidy, Hoff, Curtis, Pacht, Cassidy & Frame, P.C., Burlington, VT, Seth Price, Gina Vitiello, Shapiro, Fussell, Wedge, Smotherman, Martin & Price, LLP, Atlanta, GA, for Zurn Industries, Inc., Zurn EPC Services, Inc.

Richard Thomas Cassidy, Hoff, Curtis, Pacht, Cassidy & Frame, P.C., Burlington, VT, for Aalborg Industries, Inc.
Ernest J. Mattei, Kathleen D. Monnes, Day, Berry & Howard, Hartford, CT, James W. Spink, Elizabeth Hawkins Miller, Spink & Miller, PLC, Burlington, VT, for the Hartford Steam Boiler Inspection and Insurance Co.

*Opinion and Order*

(Papers 46 and 49)

MURTHA, Chief Judge.
The City of Burlington (City) has brought this action alleging that Defendants Zurn Industries, Inc., Zurn EPC Services, Inc., Aalborg Industries, Inc. (collectively Zurn) and Hartford Steam Boiler Inspection and Insurance Company (Hartford) breached their contract with the City when Defendants sold, installed and certified for inspection a faulty economizer boiler system in the City's wood-fired steam generator. The City also contends that Zurn acted negligently in performing under the contract and in subsequently failing to discover the boiler's defects. Finally, it contends that, after an inspection of the boiler, Zurn and Hartford negligently misrepresented that the boiler complied with the ASME Boiler and Pressure Vessel Code.

Defendant Zurn Industries, Inc. moves for summary judgment pursuant to Fed.R.Civ.P. 56(c), asserting that under the terms reached in earlier negotiations, the City released Zurn from all future claims involving "any equipment" related to the boiler. Zurn also argues that the City's claims are barred by a contract provision that required any breach of contract claims be brought within 18 months of the completion and initial firing of the boiler. Zurn further argues that because the City *457 was on notice of the boiler problems by 1988, its 1999 claims are barred by the state statute of limitations. *See* 12 V.S.A. § 511. Finally, Zurn contends that the City's negligence claims are barred because Vermont law does not permit negligence claims where the al-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

135 F.Supp.2d 454
135 F.Supp.2d 454
(Cite as: 135 F.Supp.2d 454)

Page 4

leged injury is purely economic.

In its cross motion for summary judgment, the City requests that Zurn's affirmative defense of release from liability as the result of Burlington Electric Department's Performance Supervisor Thomas Carr's assurances should be dismissed as a matter of law.

For the reasons set forth below, Zurn's motion for summary judgment is DENIED in part and GRANTED in part. The City's cross motion is DENIED.

*Background*

In 1982, the City and BED finalized a purchase order agreement (# 102) with Zurn to design, manufacture and erect an economizer boiler for the City's wood-fired steam generator, the McNeil Station. The economizer consisted of metal tubing which Zurn welded together to create the boiler. Zurn completed the work in February 1984 and the boiler began operating in March. The agreement specified that all causes of action arising as a result of the contract must be brought within 18 months of the completion of the erection and initial firing of the boiler.

Between September 1984 and April 1986, Zurn and the City worked through a number of outstanding issues relating to each party's performance requirements under the contract. After negotiations, the parties apparently resolved these issues. On April 23, 1986, BED's Production Superintendent, Thomas Carr, provided Zurn with a letter which stated:

In consideration of the concessions given by Zurn Industries in this matter, as mutually agreed to in our meeting on 1 April 1986, B.E.D. releases Zurn from any further obligation to bear costs associated with the malfunction or failure to perform of any equipment furnished by Zurn on B.E.D. Purchase Order # 102.

Paper 47 at 4.

In February 1987, the economizer leaked for the first time in the area where the tubes had been welded. A second leak, again at a weld, occurred in July 1988. John Irving, BED's plant manager, reported the leaks in the station's monthly operating reports. Irving noted that he believed the leaks were the result of weld failures attributable to faulty installation. Thereafter, the weld leaks apparently began to increase in frequency with 27 weld failures occurring between April 1995 and March 1999. BED performed a radiographic examination of the welds and discovered that the leaks resulted from a lack of full weld penetration. All 516 welds in the boiler's lower section revealed a lack of full penetration.

*Analysis*

I. *Summary Judgment Standard*

Summary judgment is appropriate if "there is no genuine issue as to any material fact, and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). Once the moving party has demonstrated the absence of any genuine issue of *458 material fact, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). The court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

II. *Breach of Contract*

Neither party disputes the viability of the contract

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

or the failure of the welds. Rather Zurn asserts the City executed a release that effectively prevented the City from bringing any future suit against Zurn relating to its performance under the contract. In the alternative, Zurn argues that either the contractual time limitation on litigation or the state statute of limitations on contract actions, bars the suit.

A. *The Release*

The City argues that Zurn's release defense is ineffective because BED's board never authorized Carr to release Zurn from future obligations to bear costs associated with the malfunction or failure to perform of any equipment furnished by Zurn on BED Purchase Order # 102. On this basis, the City contends the Court should dismiss the defense. Zurn contests the City's assertion, claiming the facts and circumstances surrounding Carr's actions indicated that he had the authority to sign a release on behalf of BED and, therefore, because the City has released Zurn from liability, the Court should grant summary judgment on its behalf.

[1] "As a general rule, the knowledge of an agent acting within the scope of his or her authority is chargeable to the principal, regardless of whether that knowledge is actually communicated." *Sawyer v. Crowell,* 151 Vt. 287, 559 A.2d 687, 690 (1989). Actual authority may be express or implied. Implied authority is "actual authority circumstantially proven from the facts and circumstances attending the transaction in question." *New England Educational Training Servs., Inc. v. Silver St. P'ship,* 148 Vt. 99, 528 A.2d 1117, 1119 (1987) (citation omitted). "Such authority may be implied or inferred from the words used, from customs and from the relations of the parties." *Id.*

[2] Generally, a municipal corporation, such as BED, is not bound by a contract (in this instance a release) executed by one of its employees, however, unless it had granted the employee the authority to enter into the contract on the corporation's behalf. *See, e.g., Petition of Vermont Elec. Power Prods., Inc.,* 165 Vt. 282, 683 A.2d 716, 720 (1996) ("Actions taken by an employee of a public agency that are beyond the power and authority of that employee will not bind the agency.").

[3] Moreover, the party dealing with an agent of a municipal corporation carries the burden of ascertaining whether the agent is within the limitation of his or her authority. "[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Fed. Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947).

The City contends that Zurn errs in attempting to apply the law of agency in the private context to a municipality which enjoys a different set of rules. It claims that under the City's Charter, only BED's Board of Commissioners had the authority to execute a release and no evidence exists in the minutes of BED board meetings or elsewhere to indicate BED had ever given approval to Thomas Carr to sign a release with Zurn waiving the City's right to bring legal claims in connection with the McNeil station. It further claims that because the *459 Charter does not expressly provide a grant of authority to Carr as production superintendent, Carr could not have possessed the authority to execute the release. Thus, the City argues, Carr acted outside the bounds of his authority in issuing the release to Zurn.

[4] Zurn has adduced no evidence to indicate that Carr may have had the actual authority to issue the release. The law clearly presumes that Zurn, in dealing with a municipal entity, was obligated to discover whether the municipality had granted Carr the authority to enter into the release on its behalf. Zurn also has not shown that the BED board expressly authorized Carr to issue the release. Therefore, the release cannot be valid under a theory of actual authority.

[5] Carr may have manifested apparent authority

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

135 F.Supp.2d 454
135 F.Supp.2d 454
(Cite as: 135 F.Supp.2d 454)

Page 6

[FN1], however, to release Zurn from future liability. "A public authority is not bound by a declaration of its agent unless it manifestly appears that the agent was acting within the scope of his authority, or that he had been held out as having authority...."*Hawkins v. United States*, 96 U.S. 689, 691, 24 L.Ed. 607, 608 (1877). Carr clearly held himself out as having the authority to engage in contractual matters for BED. Indeed, he signed the initial purchase order agreement, executed changes to the order, and negotiated the contract's settlement.

> FN1. The elements of a claim of apparent authority are: (1) the principal must, by words or conduct, create appearance of authority in agent; and (2) the third party must reasonably rely on that appearance of authority. *FDIC v. Providence College*, 115 F.3d 136, 140 (2d Cir.1997).

Moreover, the City has not challenged the validity of the original contract on the basis of Carr's lack of authority. Although the City points to the absence of a direct grant of authority to BED's Superintendent in the City Charter, such an omission does not by necessity indicate that the Superintendent was not vested with the authority to contract with Zurn. Without facts to explain BED's decision-making process or to determine the nature and degree of power it had delegated to Carr in its dealings with Zurn, it is impossible to establish whether Carr acted within the scope of his authority in issuing the release.

[6] Even though Vermont law requires that "all persons dealing with [municipal officers] are bound to know the extent and limitation,"*Town of New Haven v. Weston*, 87 Vt. 7, 86 A. 996, 999 (1913), of their authority, where the municipal corporation acts similarly to a private corporation in ordinary business affairs, the law does not absolutely preclude enforcement of the municipality's contract regardless of the officer's authority. "[W]here the infirmity in the contract lies merely in the lack of authority of the one who assumes to make it for the municipality, and the latter has received and retains the benefit of the contract, the law will not refuse relief to the other party, at least to the extent of the benefit conferred." *Id.; see also Cent. Vermont Pub. Serv. Corp. v. Town of Springfield,* 135 Vt. 436, 379 A.2d 677, 680 (1977) ("[B]etter rule is that when a municipality has accepted benefits wrought by performance of a contract invalid for failure to satisfy some formality in its execution, but with the apparent authority of the municipality's authority, it ... should not be allowed to recover any funds which have been paid.").

BED issued the release only after Carr engaged in extensive negotiations with Zurn related to the completion of performance by both parties. Apparently, given the nature of negotiations, both parties *460 made concessions and accepted benefits in exchange. In fact, the release specifically states that it was executed in exchange for unspecified concessions from Zurn. Therefore, it is probable that BED benefitted, in some manner, by agreeing to sign the release.

[7] Because "[a] contract enforceable against a municipal corporation may be proved by circumstances, acts, conduct, and sayings of municipal officers having authority to bind the corporation[,]"*Town Dist. of Hardwick v. Town Dist. of Wolcott,* 78 Vt. 23, 61 A. 471, 471 (1905), whether the release is legally valid remains a genuine issue of material fact best left to the fact finder that cannot be decided as a matter of law.[FN2]

> FN2. The City also claims that Zurn has failed to allege that it relied, reasonably or otherwise, to its detriment on Carr's apparent authority and, thus, even if apparent authority could be legitimately asserted under these circumstances, Zurn's claim fails to set forth an essential element and cannot stand. Zurn alleges that it engaged in lengthy negotiations with BED in order to terminate its performance under the contract. Although it has not specifically stated what benefits it conferred upon BED

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

in order to receive the release, Zurn has alleged sufficient facts to show that it relied on the release in providing BED with concessions prior to BED's execution of the release.

[8][9][10] Finally, the City urges the Court to find that if the release is valid, it releases Zurn only from the City's breach of contract claim, not from its negligence claims. "[C]ontractual provisions limiting the tort liability of parties to a contract are not per se unconscionable." *Loli of Vermont, Inc. v. Stefandl*, 1996 WL 192004, *2 (D.Vt. Jan.9, 1996) (citing *Colgan v. Agway, Inc.*, 150 Vt. 373, 553 A.2d 143 (1988)). A disclaimer of liability, however, is construed strictly against the party relying on it. *Id.* The language of the provision must be specific enough to unmistakably reflect the intent of both parties in order to relieve the defendant of possible liability. *Colgan*, 553 A.2d at 145. The question of the adequacy of the provision is a matter of law for the court to decide. *Cf. Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 556 A.2d 81 (1988).

[11] The City claims that the language of the release "fails to include any hint that claims sounding in negligence were intended to fall within its scope." Paper 50 at 10. To the contrary, the release, executed after lengthy negotiations and created by the Plaintiff's putative agent over a year after the parties had agreed on concessions necessary before executing the release, speaks directly of relieving Zurn "from any further obligation to bear costs associated with the malfunction or failure to perform of any equipment." Paper 47 at 4. The meaning of this phrase, though broad, is abundantly clear and it supports but one interpretation. The absence of the word "negligence" has no bearing on the phrase's clarity. Therefore, the release would be valid as to all of the City's claims.

B. *Time Limitations*

Zurn contends that the City knew, or should have known, that the economizer boiler leaked by 1988 and thus was obligated to bring its claims either within the 18-month provision contained in the purchase order or, at the very least, within Vermont's six-year statute of limitation governing civil actions. *See* 12 V.S.A. § 511. The City asserts that it was unaware of the degree of the problem until 1994 when the leaks reached "epidemic proportions" and, because it claims that the contractual limitation does not apply where the contract does not involve the sale of goods, the applicable six-year statute of limitation *461 did not begin to run until 1994.FN3

> FN3. In an odd conflation of its claims, the City asserts that it could not have discovered the problems with the boiler within the applicable time period because Zurn fraudulently concealed "the fact that all of the 518 shop welds in the lower section of the economizer, and a large percentage of the shop welds in the upper two sections, lacked full penetration." The City, however, has not raised a claim of fraudulent concealment in its complaint. It cannot, in the pleadings, convert a negligent misrepresentation claim into an excuse for failing to timely file its claims. *Cf. Reisner v. Gen'l Motors Corp.*, 671 F.2d 91, 93 (2d Cir.), *cert. denied*, 459 U.S. 858, 103 S.Ct. 130, 74 L.Ed.2d 112 (1982). Thus, the Court does not consider this argument in deciding the time limitations issues.

[12] The question of whether goods or services predominate in a contract is one of fact. When there is no controversy regarding the contract's provisions, however, the Court may resolve the issue as a matter of law. *Allmand Assocs., Inc. v. Hercules Inc.*, 960 F.Supp. 1216, 1223 (E.D.Mich.1997). In this instance, the parties dispute the scope and validity of the release. Therefore, because a genuine issue of material fact regarding the contract remains, it is inappropriate for the Court to decide as a matter of law whether the contract is governed by Vermont's Uniform Commercial Code.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[13] Assuming without deciding, however, that the contract is predominately one for the sale of services, the issue of when the Plaintiff discovered "facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery," *Vermont Agency of Natural Res. v. Towns,* 168 Vt. 449, 724 A.2d 1022, 1024 (1998), is also a question of fact, not of law. *Id.* A grant of summary judgment is clearly unwarranted given these outstanding material factual issues.

C. *Negligence Claims*

The City alleges that Zurn acted negligently when it breached its duty to perform under the contract and to adequately inspect its work by, among other things, failing to perform "in a workmanlike manner, and according to industry standards." Paper 27 at 4. It further alleges that Zurn (in cooperation with Hartford), in certifying that the boiler's "chemical and physical properties" met the requirements of the ASME Boiler and Pressure Vessel Code, negligently misrepresented the actual status of the boiler.

Zurn claims that the statute of limitations has run on the City's negligence claims as well as its breach of contract claim. In the alternative, Zurn argues that the City's "general negligence claim" is barred as a matter of law.

[14] As stated above, whether or not the Plaintiff's claims would be time barred is an issue for the finder of fact. The issue of whether the City's losses are recoverable under a negligence theory, however, is a matter of law to be decided by the Court. Vermont's " '[n]egligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm,' which does not include economic loss." *Gus' Catering, Inc. v. Menusoft Systems,* 762 A.2d 804, 807 (Vt.2000) (quoting *O'Connell v. Killington,*

*Ltd.,* 164 Vt. 73, 665 A.2d 39, 42 (1995)).

[15] The City does not allege that any injury resulted from the boiler leaks other than to the boiler itself. It does not allege that the boiler leaks caused anyone to sustain bodily injury or that the leaks contributed to the damage of any other property. *See, e.g.,* *462 Restatement (Second) of Torts § 7(3) (1965) (physical harm means physical impairment of chattels). Therefore, because the City's negligence claims are based solely on the improper installation and construction of the boiler, the damages are strictly economic and are not recoverable under a negligence theory. *See Gus' Catering,* 762 A.2d at 807 (citing Note, *Economic Loss in Products Liability Jurisprudence,* 66 Colum.L.Rev. 917, 918 (1966) (defining economic loss as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits-without any claim of personal injury or damage to other property.")).

*Conclusion*

The questions of whether BED's production superintendent, Thomas Carr, had apparent authority to release Zurn from future liability and when BED discovered the leaks are genuine issues of material fact to be decided by the fact finder. Therefore, Zurn's motion for summary judgment on these issues is DENIED. Moreover, the City's motion for summary judgment on the release as an affirmative defense is also DENIED. Finally, although the release would appear to be a waiver of the City's negligence claims, Zurn's motion for summary judgment as to the City's negligence claim, negligent inspection claim, and negligent misrepresentation claim is GRANTED because of the City's failure to allege a non-economic injury.

SO ORDERED.

D.Vt.,2001.
City of Burlington v. Zurn Industries, Inc.
135 F.Supp.2d 454

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

135 F.Supp.2d 454
135 F.Supp.2d 454
(Cite as: 135 F.Supp.2d 454)

Page 9

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.