## UNITED STATES DISTRICT COURT
## IN THE DISTRICT OF VERMONT

HUNT CONSTRUCTION GROUP, INC.,    )
    )
        Plaintiff,    )   Case No. 1:08-cv-00065
    )
    v.    )
    )   Honorable Garvan Murtha
BRENNAN BEER GORMAN /    )
ARCHITECTS, P.C., WILSON    )
ASSOCIATES, S. DeSIMONE    )
CONSULTING ENGINEERS, LLC, and    )
COSENTINI ASSOCIATES, INC.,    )
    )
        Defendants.    )

## HUNT CONSTRUCTION GROUP, INC.'S BRIEF IN OPPOSITION TO CERTIFYING QUESTIONS OF STATE LAW TO THE SUPREME COURT OF VERMONT

Hunt Construction Group, Inc. ("Hunt"), by its attorneys, for its Brief in Opposition to Certifying Questions of State Law to the Supreme Court of Vermont, states as follows:

### INTRODUCTION

This Court has requested briefs on whether it should certify questions of state law in this case to the Supreme Court of Vermont. The two legal questions raised by Defendants' motions to dismiss are: 1) whether the professional services exception to the economic loss rule applies under the facts in this case, and 2) whether purely economic damages are available in causes of action for negligent misrepresentation. Neither of these questions are subject to review by the Supreme Court of Vermont.

The standard for certifying a question to the Supreme Court is that the question is one for which there are no controlling precedents. There is controlling precedent from the Supreme Court of Vermont recognizing and discussing the professional services exception to the economic loss rule, making certification of that question inappropriate. Likewise, there are cases

from the Supreme Court of Vermont explicitly adopting the Restatement (Second) of Torts' definition of negligent misrepresentation and permitting purely economic damages for those claims. Therefore, certification of the second question is also unwarranted.

In addition, the Supreme Court rarely reviews certified questions, and when it does so, those questions typically involve the interpretation of Vermont statutes, not the interpretation of Vermont common law. This, coupled with the fact that controlling precedents are available, increases the likelihood that the Supreme Court would not grant certification, which would result in unnecessary delay of this litigation. Finally, if this Court believes certification of state law questions is necessary, it should postpone certification until the completion of fact discovery because ruling on these questions absent further fact development is premature, and additional facts would assist in framing any issues the Supreme Court may review.

## I.    There Are Controlling Precedents From The Supreme Court Of Vermont, Making Certification Of The State Law Questions In This Case Unnecessary.

Rule 14 of Vermont's Rules of Appellate Procedure states, "The Vermont Supreme Court may answer a question of Vermont law certified to it by a court of the United States, if the answer may be determinative of an issue in pending litigation in the certifying court **and there are no clear controlling precedents in the decisions of the Vermont Court.**" V.R.A.P. 14(a) (emphasis added). The condition of no controlling precedents was "intended to prevent undue burdens on the Vermont Court by precluding unnecessary use of the procedure." Reporter's Notes to V.R.A.P. 14. Therefore, where controlling precedents exist, certification is inappropriate. *Samaha v. Scott's Constr., Inc.*, 543 F. Supp. 2d 341, 342 (D. Vt. 2008) (Sessions, C.J.) (denying certification because, while the precise question had not been addressed by the Supreme Court, the Supreme Court's prior decisions provided a sufficient framework that the District Court could apply to rule upon the question).

179017/3                                                    2

A.    **There are controlling precedents regarding Vermont's application of the professional services exception to the economic loss rule.**

Defendants argue that Hunt's negligence claims are barred by the economic loss rule, but they ignore controlling precedent from the Supreme Court of Vermont recognizing a professional services exception to that rule.   The Supreme Court has explicitly acknowledged that purely economic damages can be recovered for negligence in professional services cases.  *EBWS, LLC v. Britly Corp.*, 181 Vt. 513, 524 (Vt. 2007); *Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 316-17 (Vt. 2001) (recognizing a professional services exception in Vermont, but refusing to apply it in that case because the defendant was not a licensed professional).   Indeed, all four defendants acknowledged the existence of this exception to the economic loss rule.  Defs. Mem. in Supp. of Mot. to Dismiss, pp. 6-7; Wilson Mot. to Dismiss, p. 4.  The only dispute is whether the exception applies in this case, an inquiry that involves questions of fact and makes certification inappropriate.

The Supreme Court of Vermont set forth guidelines and factors that should be used to determine whether the professional services exception applies.  *EBWS* stated that the exception arises where there is a "special relationship" between the parties.  181 Vt. at 524.  *EBWS* and *Springfield Hydroelectric* both stated that professional licensure is one factor to consider in determining whether a special relationship exists.  *Id.* at 524-25; *Springfield Hydroelectric*, 172 Vt. at 316-17.  *Springfield Hydroelectric* identified foreseeability as a second factor.  172 Vt. at 316.  The Supreme Court of Vermont has thus adopted a rule and provided a framework in the above cases for courts to use in deciding whether the special relationship exception applies to the particular facts of a case.

Contrary to *EBWS* and *Springfield Hydroelectric*, however, the Defendants argue that privity is required for the professional services exception to apply.  See Defs. Mem. in Supp. of

Mot. to Dismiss, pp. 6-9.  Their argument is based on an unpublished trial court decision.  *Mount Snow Grand Summit Hotel and Crown Club Owners Ass'n, Inc. v. Grand Summit Resort Props., Inc.*, Dkt. No. 564-12-03, p. 8 (Windham County Super. Ct. Oct. 25, 2007).  That decision is contrary to the opinions of the Supreme Court of Vermont, which indicate that a "special relationship" does not require privity.  *EBWS, LLC*, 181 Vt. at 524 (focusing on the professional licensure of the defendant and failing to even mention that privity existed between the parties); *Springfield Hydroelectric*, 172 Vt. at 316 (keeping the "special relationship" inquiry separate from the privity inquiry).  In the alternative, Defendant Wilson argues that the Supreme Court of Vermont adopted Colorado's analysis of the applicability of the economic loss rule, and that under that analysis, Hunt cannot recover for economic loss.  Wilson Reply Br., pp. 3, 6.  This is simply not true, and there has been no statement by the Supreme Court of Vermont indicating its adoption of Colorado's economic loss jurisprudence.

The Defendants have attempted to distinguish the controlling precedent from the Supreme Court of Vermont by citing to non-binding authority, such as Vermont trial court opinions and opinions from other states.  Moreover, no court has ever certified a question to the Supreme Court of Vermont on the grounds that an unpublished trial court decision or an out-of-state court's opinion was inconsistent with a Supreme Court of Vermont decision.  Like the District Court in *Samaha*, this Court does not write on a blank slate with respect to Vermont's application of the professional services exception to the economic loss rule, and certification is therefore not warranted.

**B.    There are controlling precedents regarding whether purely economic damages are recoverable for negligent misrepresentation claims.**

Defendants argue that the economic loss rule bars Hunt's claims for negligent misrepresentation, but they ignore the fact that the Supreme Court of Vermont has repeatedly

awarded purely economic damages under that cause of action. The Supreme Court adopted the

Restatement (Second) of Torts' definition of negligent misrepresentation, *Limoge v. People's*

*Trust Co.*, 168 Vt. 265, 268-69 (Vt. 1998), which states in relevant part:

> One who, in the course of his business, profession or employment, or in any other
> transaction in which he has a pecuniary interest, supplies false information for the
> guidance of others in their business transactions, is subject to liability for
> pecuniary loss caused to them by their justifiable reliance upon the information, if
> he fails to exercise reasonable care or competence in obtaining or communicating
> the information.

Restatement (Second) of Torts §552(1) (emphasis added). In addition, the Supreme Court of

Vermont has, on multiple occasions, awarded economic damages for negligent

misrepresentation. *See, e.g., Limoge*, 168 Vt. at 266 (permitting negligent misrepresentation

claim seeking only economic damages to proceed); *Pearson v. Simmonds Precision Prods., Inc.*,

160 Vt. 168, 173-74 (Vt. 1993) (affirming award of purely economic damages for negligent

misrepresentation); *Silva v. Stevens*, 156 Vt. 94, 101, 113 (Vt. 1991) (economic damages

awarded pursuant to negligent misrepresentation theory affirmed); *Kramer v. Chabot*, 152 Vt.

53, 58 (Vt. 1989) (allowing economic damages for negligent misrepresentation).

Defendants' primary argument as to why, despite these precedents, the economic loss

rule should bar Hunt's claims is that there are two decisions from the District Court of Vermont

where negligent misrepresentation claims were barred because they sought only economic

damages. Those cases are distinguishable from the facts at bar, but even if they were not, there

are no instances where a question was certified to the Supreme Court of Vermont due to an

alleged inconsistency between Vermont state cases and Vermont federal cases. This Court is

bound to follow the interpretations of Vermont's law made by its state courts, not federal courts.

*Bank of N.Y. v. Amoco Oil Co.*, 35 F.3d 643, 650 (2d Cir. 1994). The precedent from the

Supreme Court of Vermont concerning economic damages for negligent misrepresentation is

clear and controlling, and provides this Court with sufficient direction to determine whether Hunt's claims are valid. Certification is therefore unnecessary.

**II.     The State Law Questions In This Case Are Not Of A Type Typically Reviewed By The Supreme Court.**

The Supreme Court of Vermont has discretion to "decline to answer any question certified to it" under Vermont Rule of Appellate Procedure 14. V.R.A.P. 14(a). Since the rule came into effect, questions have occasionally been certified to the Supreme Court of Vermont, and the Supreme Court has exercised its discretion in choosing to review them. In one case, the Supreme Court refused to answer the certified question, finding its prior acceptance was improvidently granted. *Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 324 (2d Cir. 2005). The certification and subsequent rejection by the Supreme Court resulted in a delay in the case of approximately two and a half years. *See id.*

In the majority of cases where certification was granted, the questions that were certified were questions regarding the interpretation of Vermont's statutes. *See Ins. Co. of Penn. v. Johnson*, 2008 WL 318303, at *1 (D. Vt. Jan. 3, 2008) (application of Vermont's uninsured/underinsured motorist statute; Supreme Court has yet to accept review); *Travelers Ins. Co. v. Henry*, 178 Vt. 287, 289 (Vt. 2005) (interpretation of provision in Vermont's worker's compensation statute); *Presault v. City of Burlington*, 412 F.3d 96, 101-02 (2d Cir. 2005) (interpretation of Vermont statute regarding easements for utility companies); *In re Potter*, 313 F.3d 93, 95 (2d Cir. 2002) (conflict between two Vermont statutes); *Egri v. U.S. Airways, Inc.*, 174 Vt. 443, 443 (Vt. 2002) (applicability of statutes of limitation). It is not typical for a case to be certified to the Supreme Court to resolve a question of the applicability of a common law rule, which is precisely the type of question before the Court in this case. The state law questions in this case should not be certified to the Supreme Court because they are not the type of questions

the Supreme Court normally hears on certification.  This, combined with the fact that there are

controlling precedents for this Court to follow, increases the likelihood that the Supreme Court

will refuse to answer the certified questions, which would cause needless and lengthy delay.

**III.     Even If This Court Chooses To Certify The State Law Questions In This Case, It
           Should Postpone Such Certification Until The Close Of Fact Discovery.**

When cases are in the early stages of litigation, allowing fact discovery to proceed prior

to certifying questions of state law can assist in framing the certified questions for the Supreme

Court.  *Robinson v. Jarris*, 2008 WL 3979260, at *5 (D. Vt. Aug. 25, 2008) (Murtha, J.).

*Robinson* involved claims of retaliation against several officials of the Vermont Department of

Health.  *Id.* at *1.  On their motion to dismiss, the defendants argued certain claims were barred

under the doctrine of absolute immunity.  *Id.* at *5.  Plaintiffs responded that the Supreme Court

of Vermont had not addressed the applicability of the absolute immunity doctrine to claims of

intentional retaliation.  *Id.*  Even so, this Court denied the defendants' motion to dismiss on

absolute immunity grounds, reasoning that the "case [wa]s in the early phases of litigation and

further factual development would aid the framing of any issue which may be certified to the

Vermont Supreme Court[.]" *Id.*

Likewise, in this case, certifying questions of state law to the Supreme Court is premature

because of the fact-intensive nature of the professional services exception.  The professional

services exception arises where there is a special relationship between the parties.  *EBWS, LLC*,

181 Vt. at 524.  Determining whether such a relationship exists requires the Court to analyze the

parties' interactions during the time period in question and the impact that each of the

Defendants had on Hunt throughout the course of the Project.  In addition, foreseeability is a

fact-intensive inquiry that is also factor in the special relationship analysis.  *Springfield

Hydoelectric*, 172 Vt. at 316 ("even where courts have permitted recovery for economic loss,

they have required a 'special relationship between the alleged tortfeasor and the individual who sustained purely economic damages sufficient to compel the conclusion that . . . the injury complained of was clearly foreseeable to the tortfeasor.'"). In order to analyze whether Hunt's injuries were foreseeable, the Court will have to look at the Defendants' knowledge of how their roles in the project affected Hunt's ability to complete construction on the project.

Because the parties are before the Court on motions to dismiss, discovery has not commenced, and none of the facts that would permit this Court to determine whether a special relationship exists have been exposed. Thus, it is premature to rule on or certify the questions of state law at this time. Moreover, to the extent this Court believes there are questions of state law appropriate for certification, as it did in *Robinson*, it should postpone certification until the parties have engaged in substantial discovery so that the issues before the Supreme Court can be properly framed.

**IV.**    **Questions For Certification In The Event This Court Chooses To Certify Questions Of State Law In This Case To The Supreme Court Of Vermont At This Time.**

Should this Court choose to certify questions of state law in this case to the Supreme Court of Vermont at this time, Hunt proposes the following questions for certification:

1.      Is privity of contract between the general contractor and the designers and engineers on a project required in order for Vermont's professional services/special relationship exception to the economic loss rule to apply, thus permitting the general contractor to bring negligence claims for economic damages against the designers and engineers?

2.      Does the economic loss rule preclude economic damages for claims of negligent misrepresentation?

By proposing these questions, Hunt does not waive its opposition to certifying questions of state law to the Supreme Court of Vermont.  Hunt only proposes these potential questions for this Court's use in the event it chooses to certify questions of state law at this time.

## CONCLUSION

For the foregoing reasons, Hunt Construction Group, Inc. respectfully requests that this Court not certify to the Supreme Court of Vermont the questions of state law raised in Defendants' motions to dismiss.

Dated: October 3, 2008                                    STEIN, RAY & HARRIS LLP


Steven G.M. Stein, Esq., admitted *pro hac vice*
Joel J. Rhiner, Esq., admitted *pro hac vice*
Jean M. Gallo, Esq., admitted *pro hac vice*
222 West Adams Street
Suite 1800
Chicago, Illinois 60606
(312) 641-3700