UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| Hunt Construction Group, Inc., | : |
| Plaintiff, | : |
| v. | : File No. 1:08-CV-65 |
| Brennan Beer Gorman / Architects, P.C., Wilson Associates, S. DeSimone Consulting Engineers, LLC, and Cosentini Associates, Inc., | : |
| Defendants. | : |

RULING ON MOTIONS FOR SUMMARY JUDGMENT
(Papers 13 and 23)

Plaintiff, Hunt Construction Group, asserts common law negligence and negligent misrepresentation claims against Defendants Brennan Beer Gorman / Architects, P.C. ("BBG"), Wilson Associates ("Wilson"), S. DeSimone Consulting Engineers, LLC ("DeSimone") and Cosentini Associates, Inc. ("Cosentini").

Before the Court are Defendants' Motions to Dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) because they are barred by the economic loss rule. For the following reasons, Defendants' Motions are GRANTED and Plaintiff's claims are DISMISSED.

I. Background

Facts alleged in the complaint are assumed to be true for the purposes of a motion to dismiss. This lawsuit arises out of

a construction project for a resort hotel and spa.  In 2005, Spruce Peak Realty, LLC ("Spruce Peak" or "Client"), the owner of the construction project, retained Plaintiff, Hunt Construction Group ("Hunt"), to construct a resort hotel ( "the Project") in Stowe, Vermont.  Spruce Peak and Hunt executed a contract ("Cost Plus Contract") setting forth their respective rights and responsibilities on the Project.  Spruce Peak contracted with BBG, Cosentini, DeSimone and Wilson ("Defendants") to provide the Project plans and specifications.  BBG was the architect, Cosentini was the mechanical, electrical and plumbing engineer, DeSimone was the structural engineer and Wilson the interior designer.  Hunt was to build the Project according to the plans and specifications Defendants provided under contracts with Spruce Peak.

Hunt alleges Defendants negligently failed to provide the plans and specifications on time, submitted plans and specifications that were replete with errors and omissions, and failed to respond promptly to Hunt's requests for information and corrected drawings.  Hunt also alleges these errors and omissions constituted misrepresentations of information that Defendants knew Hunt needed in order to comply with its own contractual obligations with Spruce Peak.  Hunt does not allege that it suffered any physical harm, such as property damage, personal injury, or loss of life.  Rather, Hunt seeks damages for purely

economic loss due to the increased costs and delays created by Defendants' alleged negligence.

## II. Discussion

### A. Standard of Review

In a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court's function is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court accepts the facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff. Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007). Jurisdiction of this matter is based on diversity, 28 U.S.C. §§ 1332, and the Court applies Vermont law to the substantive issues. Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

### B. Negligence Claims

#### 1. Economic Loss Rule

Vermont has adopted the economic loss rule, which prohibits recovery under tort for purely economic losses. Breslauer v. Fayston Sch. Dist., 163 Vt. 416, 659 A.2d 1129 (1995). The thrust of the rule is that "'[n]egligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some

3

accompanying physical harm.'" Springfield Hydroelectric Co. v. Copp, 172 Vt. 311, 314, 779 A.2d 67, 70 (2001) (quoting O'Connell v. Killington, Ltd., 164 Vt. 73, 77, 665 A.2d 39, 42 (1995)) (alteration in original).  The underlying rationale is that "negligence actions are best suited for 'resolving claims involving unanticipated physical injury, particularly those arising out of an accident.  Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damage that parties have, or could have, addressed in their agreement.'" Id. (quoting Spring Motors Distribs. v. Ford Motor Co., 98 N.J. 555, 489 A.2d 660, 672 (1985)).

Although the economic loss rule's "initial development was in direct response to the emergence of strict liability in tort theories, its application is now much broader as it serves today to maintain the boundary between contract law and tort law." Id. at 315, 779 A.2d at 71 (quoting Grynberg v. Agri Tech, Inc., 10 P.3d 1267, 1269 (Colo. 2000)).  Under Vermont law, the economic loss rule "clearly applies to commercial disputes outside the confines of product liability," including suits for the negligent provision of services.  Id.  For example, in Springfield, the Vermont Supreme Court rejected a tort suit for economic damages resulting from the defendants' negligent management of a power purchase agreement.  The Court reasoned that "although [defendants] . . . maintained complex and highly specialized

4

responsibilities, the law imposes no special duty upon them for the purpose of a negligence action, which would permit finding an exception to the economic loss rule." Id. at 317, 779 A.2d at 72.

Defendants contend the economic loss rule should likewise bar this negligent services suit. They argue Hunt's alleged "cost overruns and schedule delays" are purely economic damages, and therefore remedial only in contract. Hunt admits the complaint seeks only economic damages, but argues that because Defendants are professional architects and engineers, an exception to the economic loss rule applies. Under that exception, the Vermont Supreme Court has acknowledged "there might be recovery for purely economic losses in a limited class of cases involving violation of professional duty." EBWS, LLC v. Britley Corp., 181 Vt. 513, 524, 928 A.2d 497, 507 (Vt. 2007). Thus, Hunt's claims will survive Defendants' Motions to Dismiss only if the claims fall within this limited class.

2. <u>Professional Services Exception to the Economic Loss Rule</u>

The "key" factor determining whether a claim falls within the professional services exception is the relationship between the parties. EBWS, 181 Vt. at 524-525, 928 A.2d at 508 (Vt. 2007). Vermont law requires "a special relationship between the alleged tortfeasor and the individual who sustains purely economic damages sufficient to compel the conclusion that the tortfeasor had a duty to the particular plaintiff and that the

5

injury complained of was clearly foreseeable to the tortfeasor." Springfield Hydroelectric, 172 Vt. at 316, 779 A.2d at 71 (quoting Aikens v. Debow, 208 W. Va. 486, 541 S.E.2d 576, 589 (2000)). The Court explained that whether or not such a special relationship exists "turns on whether there is 'a duty of care independent of any contractual obligations.'" Id. at 316, 779 A.2d at 71-72 (quoting Grynberg v. Agri Tech, Inc., 10 P.3d 1267, 1269 (Colo. 2000)); accord EBWS, 181 Vt. at 524, 928 A.2d at 507-508 (2007).

No such relationship existed here. Hunt's pleadings and argument reveal Defendants' contracts with Spruce Peak established their duties of care, not any special relationship with Hunt. For example, Hunt alleges "BBG negligently failed to perform its services . . . in that the Contract Documents it prepared were incomplete and contained errors and omissions . . . ." (Compl. ¶ 54.) However, Hunt admits "Defendant BBG prepared [the] Contract Documents pursuant to its contract with Spruce Peak." (Compl. ¶ 17) (emphasis added). Likewise, Hunt alleges "Defendant BBG negligently failed to promptly respond to [requests for information], shop drawings and submittals." (Compl. ¶¶ 54-55.) Yet, BBG's duty to perform each of these tasks arose from BBG's "specific responsibilities as Architect under the Construction Contract." (Compl. ¶ 18) (emphasis added).

Hunt's allegations against the other Defendants are similarly flawed. Hunt consistently points to Defendants' contractual obligations with Spruce Peak to establish their duty of care in tort. This misguided theory of tort liability is evident when Hunt argues it "stood in a special relationship [with Defendant Wilson] <u>because their contractual obligations to the Owner were inextricably intertwined</u> such that Hunt could not succeed under its contract unless Wilson adequately performed its work on the Project." (Hunt's Resp. Br. in Opp'n Mot. Dismiss by Wilson at 9) (emphasis added). Hunt essentially alleges that Defendants negligently performed their duties under their contracts with Spruce Peak and that as a result, Hunt lost the benefit of its own bargain with Spruce Peak. Such an argument conflicts with Vermont precedent requiring a "special duty of care be created beyond the terms of the construction contract." <u>EBWS</u>, 181 Vt. at 525, 928 A.2d at 508. Moreover, allowing Hunt to recover in tort simply because it "could not succeed under its contract" would violate Vermont law's mandate that "claimants cannot seek through tort law, to alleviate losses incurred pursuant to a contract." <u>Id.</u> at 524, 928 A.2d at 507 (quoting <u>Springfield Hydroelectric</u>, 172 Vt. at 314, 779 A.2d at 70).

Rather than establishing a legal duty independent of contractual obligations, Hunt focuses on Defendants' professional licensure and the foreseeability of harm to justify applying the

professional services exception.  While these factors are certainly relevant, they do not save Hunt's claims from dismissal.  The Vermont Supreme Court was clear that "the key is not whether one is licensed in a particular field, . . . rather, the determining factor is the type of relationship created between the parties."  Id. at 524-525, 928 A.2d at 508.  Defendants do not dispute that they are licensed professionals.  However, this fact alone does not create the special relationship necessary to apply the professional services exception.

Also unavailing is Hunt's argument that because Defendants allegedly could foresee Hunt's economic damages, Defendants owe Hunt a legal duty of care.  The Vermont Supreme Court in Springfield stated that the professional services exception applies when the parties' relationship "compel[s] the conclusion . . . that the injury complained of was clearly foreseeable to the tortfeasor."  Springfield Hydroelectric, 172 Vt. at 316, 779 A.2d at 71.  This analysis focuses on the relationship between the parties, not foreseeability of the injury.  Thus, although foreseeability is a necessary component of any duty grounded in tort, it is not sufficient to establish a duty in tort.  Moreover, it is not evident that Defendants "knew that Hunt would incur cost overruns and schedule delays" if Defendants did not fulfill their contractual duties in a timely and accurate manner.  (Compl. ¶¶ 22, 30, 40, 50.)  Hunt states that the alleged errors

and omissions leading to its cost overruns were addressed in specific Project Change Orders as required by the Cost Plus Contract. (Compl. ¶¶ 53-55, 60-61, 79-81, 86, 92-94, 99-100.) Section 9.1 of that Contract explains how "[t]he amount to be paid to Contractor . . . shall . . . be increased or decreased" based on Project Change Orders. Section 4.4 also requires Hunt to notify Spruce Peak of any "errors, omissions or discrepancies in the Plans, Specifications or other Contract Documents . . . ." so Hunt may seek additional compensation from Spruce Peak. (Cost Plus Contract § 4.4.) Thus, Plaintiff's remedy for "cost overruns" was detailed in its Contract with Spruce Peak. Hunt also had a remedy for delays. Section 3.2(b) provides Hunt with a monetary remedy "in the event the Contractor is delayed . . . as a result of (i) the conduct or lack of conduct by Client or Architect, or their officers, employees, agents, Client's contractors, or consultants." (Cost Plus Contract § 3.2.) Hunt offers no explanation for how Defendants "knew" Plaintiff would incur damages due to Project Change Orders and delays when Plaintiff's Contract anticipated and provided detailed remedies for these very contingencies.

"In the context of larger construction projects, multiple parties . . . typically rely on a network of contracts to allocate their risks, duties, and remedies." BRW, Inc. v. Dufficy & Sons, Inc., 99 P.3d 66, 72 (Colo. 2004). Holding Hunt

9

to its negotiated contractual remedies maintains Vermont law's separation between contract and tort law and allows parties to reliably allocate risks and costs during their bargaining. This separation is especially important in the construction industry, because "fees charged by architects, engineers, contractors, developers, vendors, and so on are founded on their expected liability exposure as bargained and provided for in the contract." EBWS, 181 Vt. at 525, 928 A.2d at 508 (quoting Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1, 124 Wash. 2d 816, 881 P.2d 986, 992 (1994)).

### 3. The Role of Contractual Privity in the Special Relationship Analysis

There is a jurisdictional split concerning whether a special relationship can exist in the absence of contractual privity or third-party beneficiary status. See, e.g., Plourde Sand & Gravel v. JGI Eastern, Inc., 917 A.2d 1250 (N.H. 2007) (declining to extend special relationship in absence of contractual privity or third-party beneficiary relationship); Eastern Steel Constructors, Inc. v. City of Salem, 549 S.E. 2d 266 (W. Va. 2001) (finding special relationship despite lack of privity because plaintiff's damages were foreseeable). Vermont's Supreme Court has not yet addressed the role of privity or third-party beneficiary status in the special relationship analysis, and this ruling does not predict Vermont law on that point.

However, the Court notes a Vermont Superior Court has addressed this issue when faced with facts similar to those presented here. See Mount Snow Grand Summit Hotel & Crown Club Owners Ass'n, Inc. v. Grand Summit Resort Properties, Inc., Windham County Super. Ct. Dkt. No. 564-12-03 Wmcv (Vt. Super. Ct. Oct. 24, 2007). In that case, an association of condominium owners sued the architect for economic damages resulting from alleged defects in the condominium's physical plant. The plaintiff argued the professional services exception saved the claim from dismissal under the economic loss rule. Id. After a review of case law in other jurisdictions and the policy considerations underlying the economic loss rule in Vermont, the Mount Snow court concluded "the professional negligence/special relationship exception should be limited to situations in which there is, at a minimum, a contractual or third-party beneficiary relationship." Id. at 8.

The court cited two main reasons for this conclusion. First, the court noted that waiving the privity requirement in professional negligence cases could put Vermont law in this area at odds with the State's professional malpractice law. The court explained that the professional services exception "is most commonly employed in professional malpractice cases in which malpractice has not resulted in physical harm. . . . In these cases, the special relationship, and thus the duty, stems from

11

contractual privity or third-party status, since such a relationship is an essential element of a professional malpractice action." Id. at 7.  Consequently, if Vermont courts did not require contractual privity or third-party beneficiary status to qualify for the professional services exception, "[they] would essentially be allowing an action for professional negligence even though an action for professional malpractice would be impossible due to the absence of one of its essential elements." Id. at 8.

Second, the court noted that under Vermont law, unlike in jurisdictions waiving the privity requirement, an "exclusive focus on foreseeability" could not support a cognizable legal duty in tort.  Id.  Rather, foreseeability is but one relevant factor, and "[u]ltimately, whether a duty exists is a question of fairness that depends on, among other factors, the relationship of the parties, the nature of the risk, and the public interest at stake."  Id. (quoting Hamill v. Pawtucket Mut. Ins. Co., 179 Vt. 250, 254, 892 A.2d 226, 228 (2005)).

Defendants urge this Court to adopt the Mount Snow court's reasoning and also dismiss Plaintiff's claims on the basis of lack of privity.  The Court declines to do so because existing Vermont precedent provides sufficient grounds to decide the case. Nonetheless, the Court notes that Hunt does not allege contractual privity with Defendants or third-party beneficiary

status.  Therefore, under the Mount Snow court's reasoning, Plaintiff's claims would likewise be dismissed.

    C.   <u>Negligent Misrepresentation Claims</u>

The policy considerations underlying Vermont's economic loss rule apply equally to tort actions for negligent representation. Indeed, this Court has previously held that tort claims for negligent misrepresentation may be subject to dismissal under Vermont's economic loss rule. <u>Vermont Country Foods, Inc. v. So-Pak-Co, Inc.</u>, Civil No. 1:02 CV 83, Doc. No. 63, p.6 (D. Vt. July 28, 2004) (granting summary judgment for defendants because plaintiff failed to allege duty of care independent of contract obligations); <u>City of Burlington v. Zurn Indus., Inc.</u>, 135 F. Supp. 2d 454, 462 (D. Vt. 2001) (finding plaintiff's negligent misrepresentation claim barred by economic loss rule).  Hunt argues that unlike the plaintiffs in those cases, it has successfully established a "special relationship" with Defendants by alleging a duty of care independent of any contractual obligations.  However, Hunt's negligent misrepresentation claims, like its negligence claims, arise from contractual duties. Hunt's complaint alleges Defendants knew and intended that Hunt would rely on the incorrect and incomplete information they provided in Project specifications and drawings.  (Compl. ¶¶ 17, 26, 35, 45.)  Hunt alleges it suffered economic damages as a result.  However, Hunt alleges Defendants were obligated to

13

provide the Project specifications and drawings under their contracts with Spruce Peak. (Compl. ¶¶ 17, 26, 35, 45.) Because Hunt has failed to allege a duty of care independent of any contractual obligations, its negligent misrepresentation claims are also barred by the economic loss rule.

III. Conclusion

Plaintiff Hunt Construction Group's negligence and negligent misrepresentation claims are subject to dismissal under the economic loss rule because they fail to allege a non-economic injury. Furthermore, these claims cannot be saved by the professional services exception because Hunt has not alleged Defendants owed Plaintiff any duty independent of existing contractual obligations. Therefore, Defendants' Motions to Dismiss are GRANTED and Plaintiffs claims are DISMISSED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 3rd day of November, 2008.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge